Consult U. S. v. Ebner [Case No. 15,020].

========

## Case No. 15,811.

### UNITED STATES ex rel. GARLAND v. MORRIS.

[2 Am. Law Reg. 348.]

District Court, D. Wisconsin.    April, 1854.

FUGITIVE SLAVE—ASSAULT ON SLAVE—WARRANT FOR APPREHENSION—STATE PROCESS.

1. The master of a fugitive slave, having him apprehended by the marshal, in pursuance of a warrant, cannot be arrested for assault and battery committed on such fugitive, while making the arrest, in aid and at the request of the marshal, before the final hearing and order of the judge.

[Cited in Ex parte Bushnell, 8 Ohio St. 601.]

2. A warrant for the apprehension of a fugitive slave is in full force until the final hearing and order; and after a rescue, a fresh pursuit may be made by the marshal and owner with the same warrant.

3. The service of process under the United States cannot be interrupted by the arrest of the officer in person aiding him in serving such process; or in any other manner, by means of state process or warrants.

[Cited in Re McDonald, Case No. 8,751; Re Bull, Id. 2,119.]
[Cited in Walker v. Howard (Tex. Civ. App.) 30 S. W. 1096.]

[Suit by the United States, upon the relation of B. L. Garland, against Timothy D. Morris.]

MILLER, District Judge. The relator, a citizen of the state of Missouri, obtained a warrant upon affidavit, for the apprehension of Joshua Glover, whom he alleged to be his slave for life, and as such to owe him service and labor in the state of Missouri, whence he escaped. The warrant was issued to the marshal, who arrested the fugitive, with the aid of the relator, in the county of Racine, in this state, and placed him in the jail of Milwaukie county for safe keeping, until the hearing. The same day of the arrest and imprisonment, a warrant was issued by the mayor of the city of Racine upon the affidavit of one James Clement, against the relator, for assault and battery upon the body of Glover. In the afternoon of the day of the imprisonment of Glover, a mob rescued him by forcing the jail doors; and at the same time the warrant for the arrest of the relator was placed in the hands of the respondent Morris, as sheriff of Racine county for service; and

just after the rescue, it was executed by the arrest of Garland, the relator. Before the rescue, a writ of habeas corpus was issued by the judge of Milwaukie county to the marshal, and also the sheriff of Milwaukie county, to produce the body of the fugitive Glover; which writ was not obeyed.

The relator applied to me as the judge of the district court of the United States for this district, for a writ of habeas corpus; which was allowed, and directed to the respondent to produce the body of his prisoner. The respondent made answer to this writ, that he held the custody of the relator, by virtue of the warrant of the mayor of Racine, as above stated.

This writ of habeas corpus was allowed under the act of congress, of March 2, 1833 (4 Stat. 632), which is, "that either of the justices of the supreme court, or a judge of any district court of the United States, in addition to the authority already conferred by law, shall have power to grant writs of habeas corpus in cases of a prisoner or prisoners in jail or confinement, when he or they shall be committed or confined, in or by any authority or law, for any act done or committed to be done, in pursuance of a law of the United States, or any order, process, or decree, of any judge or court thereof, any thing in any act of congress to the contrary notwithstanding."

The deputy marshal, who served the warrant for the apprehension of Glover, the fugitive, made return to that warrant, with an affidavit as to the truth of the facts set forth in said return. In that return, he states that in pursuance of the next warrant, he proceeded, with the said B. S. Garland and other deputies, to Racine county, where the said Glover was with difficulty, and after resistance, arrested, with the aid of said Garland and others, as required by me. In making said arrest, no more force was used than was actually necessary, for the resistance by said Glover and others was great. This return was read at the hearing, when the counsel of the relator called this deputy marshal to testify to the facts connected with making the arrest, including the above. The counsel opposed objected thereto, and also declined calling any witnesses on their part, or giving any evidence but the respondent's warrant. I do not deem it necessary to hear the deputy marshal state the facts already sworn to by him, and on file in this court, particularly under the objection. For the purposes of this hearing, I consider the facts above stated sufficiently attested.

Glover, the fugitive, did not make the complaint against this relator, before the mayor of Racine; nor does it appear that he authorized Clement to do so in his behalf, or that Clement had personal knowledge of the matter of the complaint. It is not shown that there was any other cause of complaint by Glover against the relator; nor is it at-

all probable that there could be, as the relator resides in Missouri, and came from there here. I view this warrant of the mayor to have been obtained by an officious intermeddler, for the same purpose as the habeas corpus—to effect the rescue of the fugitive Glover. The affidavit of Garland, the warrant for the apprehension of Glover, the return under oath, the rescue, and the habeas corpus from the county court, are sufficient to satisfy me, for the purposes of this hearing, that Garland, the relator, is the master of Glover, and that no more force was used than was necessary to effect the apprehension of his fugitive slave. By the act to amend and supplementary to, the act respecting fugitives, &c. (4 Stat. 462, c. 7): "When a person held to service or labor in any state or territory of the United States, has heretofore, or shall hereafter escape into another state or territory of the United States, the person or persons to whom such labor or service may be due, or his, her or their agent or attorney, duly authorized by power of attorney in writing, acknowledged and certified under the seal of some legal officer or court of the state or territory in which the same may be executed. may pursue and reclaim such fugitive person, either by procuring a warrant from some one of the courts, judges. or commissioners aforesaid, of the proper circuit, district or county, for the apprehension of such fugitive from service or labor; or by seizing and arresting such fugitive where the same can be done without process, and by taking or causing such person to be taken, forthwith before such court, judge or commissioner, whose duty it shall be to hear and determine the case of such claimant in a summary manner." This law gave the relator Garland, the choice to apprehend his fugitive slave either with or without a warrant, and to take him before a judge or a commissioner for hearing. In this case he was aiding the marshal in the service of a warrant. at the officer's request. He was acting under a law of the United States, and also aiding the marshal, or officer, in the service of process of the United States. The relator is clearly a person within the act of the 2d March, 1833, upon which this writ was allowed.

It is too well settled. for me to quote authorities, that the judiciary of the federal and of the state governments. are entirely independent of each other; and that the courts of one government cannot by warrant, injunction, or any other writ. or process, restrain or interrupt the service of the process of the other. The warrant for the apprehension of Glover, the fugitive. had not been fully executed by the arrest merely, and when Garland, the relator. was arrested by this respondent, it was in full force until the fugitive was brought before the judge, or commissioner, and an order made, either to discharge him from custody or to remand him to his master. Glover has been rescued

and is now at large, and is liable to be re-arrested upon that same warrant.

The relator and the marshal have a legal right to enter upon fresh pursuit of the fugitive. By the law, the marshal is liable for the full value of this fugitive, in Missouri, to the master, and for this cause he is inclined, no doubt, to retake him; and he has also a right, still to require the aid of this relator. For these reasons, I cannot but consider the imprisonment of the relator, or of the marshal, (who was also prosecuted in Racine,) a greater outrage than the rescue.

The law under which the fugitive was apprehended, is a law of the United States, adopted in pursuance of the constitution, and must be enforced. The judges, commissioners, marshals, or claimants are not to be interfered with, in its administration or execution, by state courts or officers. The process, or warrant, shall be served without hindrance from any quarter; the same as process issued in pursuance of any other law. If our judges and marshals should be permitted to be interrupted, or embarrassed in the performance of their duty under that law, they may be under any other law, or all the laws of the general government, until they become dead upon the statute book. The sovereignty of the government, asserted through the process from its courts, shall not be affected or nullified by resistance, or by the arrest of officers or men engaged in the service of such process. If this proceeding were tolerated, rescues may be made in any case, where the marshal has the custody of a prisoner, by arresting the marshal, and withdrawing him from such duty. While the marshal is serving his process, the person or property seized or arrested, and in his custody, by virtue of such process, cannot be taken out of his custody either directly or indirectly, by means of process of any kind or description from the state courts; nor will I permit the marshal to interrupt, or interfere with the service of process from the state courts. I have directed the marshal to return to sheriffs property he had taken from them by replevin, which they had seized upon execution or attachment. The courts of the two governments are located in the same state, but are independent of each other; and are not to be brought in conflict without endangering the harmony of these governments. The rules adopted by the supreme court of the United States, on this subject, are well defined, and must be adhered to. If this case were in the state court, I have no doubt of the discharge of this relator from the custody of the marshal; as it would be the duty of that court to require the full service of its first process; and I should direct the marshal to comply with such order without delay. The act of congress. of 1833. gives the same power to the federal courts, in this particular, as is vested in the state courts. It is true that, that act does not expressly empower

the judges to hear and determine the matter upon the return of the writ of habeas corpus, but that power is necessarily inferred, from the power to allow the writ.

The relator is ordered to be discharged.