## Case No. 14,246.

### Ex parte TURNER.

### Ex parte MAYER.

[3 Woods, 603.] [1]

Circuit Court, M. D. Alabama. Feb., 1879.

HABEAS CORPUS — ACT DONE UNDER PROCESS OF FEDERAL COURT—CONTEMPT—CONFLICTING AUTHORITY.

1. When a person is in custody for an act done or ·omitted. in pursuance of a law of the United States, or of an order, process or decree of a court or judge thereof, he is entitled to be discharged on habeas corpus, no matter by what authority he is restrained of his liberty, nor how regular and formal the proceedings against him may be.

2. The fact that he is in custody, by virtue of the judgment of a state court, for contempt, forms no exception to this rule

3. When poll-books, ballots and other papers relating to an election have, by virtue of the process of a court of the United States, come into its possession, where they are retained to be used as evidence in prosecutions pending in that court, they cannot be taken from its custody by the order of a state court, on the ground that the law of the state places them in the keeping of the inspector of election↘

4. Both the state and federal courts have the power to require the production of ballots, poll-books and other papers relating to an election, when they are necessary and proper evidence in prosecutions for offenses of which those courts respectively have jurisdiction, notwithstanding the fact that the state law places their custody with the election inspector.

5. The court which first obtains, by its process, possession of papers and documents which are proper evidence in a prosecution pending in such court, has the right to retain them until they have been used in evidence, and no other court of concurrent jurisdiction can. without its leave, take them from its custody, or require its officers to produce them before its grand jury.

6. Officers of a court of the United States, who are arrested by a state court for contempt, in refusing to obey such a requirement, are entitled to be discharged on habeas corpus.

At law.

L. W. Day, Asst. U. S. Atty.. and Robert McFarland, for petitioners.

John D. Brandon and Paul L. Jones, contra.

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

BRUCE, District Judge. These cases are, by agreement, heard together. The same legal principles apply and control in each. The facts of the cases will appear in the opinion. The petitioner, George Turner, who, it appears from the evidence, was at and before the time of his arrest and imprisonment, and still is, marshal of the United States for the Southern and Middle districts of Alabama, and Charles E. Mayer, who was at and before the time of his arrest, and still is, district attorney of United States for the Northern and Middle districts of Alabama, applied each for the writ of habeas corpus, under section No. 753 of the Revised Statutes of the United States. They both allege, in their applications for the writ, that they were illegally restrained of their liberty by one George Mason, sheriff of Dallas county, Alabama, under an order and judgment of the city court of Selma, adjudging them to be in contempt of that court, for an act done or omitted under a law of the United States, and an order, process and decree of a court thereof. The sheriff of Dallas county. Alabama, brought the bodies of George Turner and Charles E. Mayer before me, at Huntsville, Ala., in obedience to the writ, and stated, as his return thereto, as follows: "I am the sheriff of the said county, and, as such, the keeper of said jail therein. and, as such sheriff, the said George Turner is detained by me, and that the cause of his detainure is as follows, to wit: The city court of Selma, held in and for said county and state, then being in session, adjudged the said George Turner to be guilty of contempt of said court, and, for such contempt, ordered him to be imprisoned in the jail of said county for five days, and to pay a fine of fifty dollars and the costs, and to remain in jail until the said fine and costs be paid, and until certain papers therein were produced before said court, and further ordered me, at the expiration of five days, to bring said George Turner before said court, on the 22d instant, for further orders in that behalf, and. under the orders of said court, the said George Turner was committed to the jail of said county. and, therefore, to my custody as such sheriff, all which will more fully appear by a transcript of the record and proceedings of said city court of Selma, hereto annexed. and marked 'Exhibit A,' and made a part of this return." The return of the sheriff, in the case of Charles E. Mayer, is similar to that in the case of Turner, except that there was no judgment of commitment as to time.

The question is, do these cases, as made by the evidence on this hearing, fall within section 753 of the Revised Statutes of the United States? The words of the section are: "The writ of habeas corpus shall in no matter extend to a prisoner in jail, unless when he is in custody under or by color of the authority of the United States, or

is committed for trial before some court thereof, or if in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process or decree of a court or judge thereof." The question is not by what authority these petitioners are restrained of their liberty and detained in custody, but whether were they restrained of their liberty by any authority whatever, for an act done or committed in pursuance of a law of the United States, or by an order, process or decree of a court or judge thereof. Nor is the question which I am to consider on this hearing, whether the proceedings in the city court of Selma against the petitioners, for an alleged contempt of the order and process of the court, were regular or irregular, or whether they were free from error, but the question is: Are these petitioners restrained of their liberty and detained in custody for an act done or omitted in pursuance of a law of the United States, or an order, process or decree of a court or judge thereof. If it be true that they are so restrained, no matter by what authority, or by what formality or solemnity of judgment, they must be discharged. It is clear that this section 753 of the Revised Statutes of the United States, was designed for the protection of officers of the United States, for acts done by them or omitted in the execution of the laws of the United States, and in obedience to the orders and decrees of the courts thereof. The congress which enacted this law, which was approved March 2, 1833 [4 Stat. 632], recognized it as at least possible that officers of the United States, for acts done or omitted in the execution of the laws of the United States, and for acts done or omitted in obedience to the orders and decrees of its courts, might be arrested and deprived of their liberty by state authority, and this statute provides a remedy for such a state of things.

What, then, were the acts done, or omitted to be done, by these officers, which resulted in their arrest and detention by the order of the city court of Selma? That will best appear by a reference to the order made by the city court of Selma, dated August 9, 1879, which seems to be the initiatory step to the proceedings which were subsequently taken, and which resulted, as the record shows, in a judgment of contempt and the arrest of these officers. The order is in these words: "On application of the grand jury, it is ordered by the court, that the subpœnas duces tecum be forthwith issued by the clerk and register of this court, to Charles E. Mayer, George Turner, J. W. Dimmick and W. J. Bibb, to be and appear before the grand jury of this court, instanter, and that they bring with them all ballot-boxes, poll-lists, ballots, inspectors' certificates, inspectors' returns, tally-sheets, statements, and all other papers and things pertaining or relating to the election held in the county of Dallas, in the state of Alabama, on the 5th day of November, A. D. 1878, for representatives in congress for the Fourth congressional district of Alabama. (Signed) Jno. Haralson, Judge, etc. January 9, 1879." The county of Dallas is within the Middle district of Alabama, and, therefore, within the territorial jurisdiction of the circuit court of the United States for that district.

It appears from the record that certain ballot-boxes, ballots, poll-lists and inspectors' returns and other papers pertaining to the election held in Dallas county, Alabama, on the 5th day of November, 1878, were produced before the grand jury of the circuit court of the United States for the Middle district of Alabama, by the ordinary process of that court at the November term, 1878, of said court held at Montgomery. It is said that the custodians of these boxes, ballots, poll-lists, inspectors' returns and other papers, under the law of Alabama, had no right to give them up to the custody of the circuit court of the United States, and that the custody of that court is illegal and wrongful. If it be correct to say that no authority was competent to take the boxes and papers from the custody provided by the law of Alabama, and if that be the true construction of section 288 of the Code of Alabama, then by what right does the city court of Selma require the production of these papers by its process of subpœna duces tecum? But it is not important on this hearing to inquire how the ballot-boxes, ballots and papers came into the custody and control of the circuit court of the United States. The fact is they did come into such control, and that by the ordinary process of the court, and being there by means of such process, they cannot be wrested from it in the manner attempted. But it cannot be maintained that the custody of the ballots, poll-lists and papers which, by direction of the state law, is given to one of the inspectors who acted as such at the poll of election, places these papers beyond the reach and process of courts of justice, state or national, which are clothed with power and jurisdiction to indict and try offenders against suffrage and the elective franchise. There are a number of penal provisions in the Code of Alabama for the protection of suffrage; they are found in chapter 8, §§ 4279 to 4994, inclusive, and it will not be maintained that the courts of Alabama have not power to require the production of these ballots and papers when they are necessary and proper evidence in prosecutions under the law of which the courts of the state have jurisdiction. The election in question was for a representative in congress, and article 1, section 4, of the constitution of the United States provides, that "times, places and manner of holding elections for senators and representatives shall be prescribed in each state by the legislature thereof, but the congress may, at any time by law, make

or alter such regulations, except as to the places of choosing senators." The congress of the United States has provided a body of penal laws for the punishment of persons who may be convicted of crimes against the elective franchise and civil rights of citizens; they are found in sections 5506 to 5532, inclusive, of the Revised Statutes of the United States, and the circuit courts of the United States are invested with original jurisdiction to try offenders against these laws. We, then, see that the circuit court of the United States for the Middle district of Alabama has power and jurisdiction to try persons charged with crimes against suffrage at the election held for member of congress on the 5th day of November, 1878, in the county of Dallas, state of Alabama. If it has such power and jurisdiction under the law, then it has the right and power to use its process to obtain the evidence, if it can be obtained, by which its jurisdiction can be made effective. If by means of its process it obtains documents and papers which are proper matters of evidence in any suit then pending, its jurisdiction attaches at once to such documents and papers, and no court of concurrent jurisdiction can by its process reach them. If it is otherwise, then one court could destroy the jurisdiction of another court of concurrent jurisdiction, by wresting from it the means by which that jurisdiction could be made effective. This is a case when the state courts and the federal courts have concurrent jurisdiction over the same subject, and it is a principle of law well settled that when the jurisdiction of a court, and the right of a plaintiff to prosecute his suit therein, have once attached, that right cannot be arrested or taken away by proceedings in another court, unless it be some court which may have a direct supremacy or control over the court where process has first taken possession, or some superior jurisdiction in the premises. Freeman v. Howe, 24 How. [65 U. S.] 450; Buck v. Colbath, 3 Wall. [70 U. S.] 334; Peck v. Jenness, 7 How. [48 U. S.] 612; New Orleans v. Steamship Co., 20 Wall. [87 U. S.] 387. In the last case cited, the supreme court of the United States uses this language: "The circuit court, having first acquired possession of the original case, was entitled to hold it exclusively until the same was finally disposed of. It was unwarranted in law, and grossly disrespectful to the circuit court, to invoke the interposition of the state court, as to anything within the scope of the litigation already pending in the federal court." The circuit court of the United States acquired jurisdiction of the subject matter at the November term, 1878, of said court. The papers, matters and things in question here were used in evidence before the grand jury at that term of the court. True bills were found by the grand jury, at that term, against various parties, for offenses alleged to have been committed in the county of

Dallas, state of Alabama, by means of fraudulent returns touching the election held in said county on the 5th day of November, 1878, and these cases are still pending and undetermined in said court.

It results from this, all of which is shown by the record and evidence upon this hearing, that the papers, matters and things in question came into the custody, control and jurisdiction of the circuit court of the United States for the Middle district of Alabama, at the November term, 1878, of said court; that they are still in such jurisdiction, to be used in evidence in causes still pending in said court. And such being the fact, they are subject to the control and jurisdiction of no other court which has only concurrent jurisdiction of the same subject matter. The jurisdiction, then, of the circuit court of the United States over the subject matter was prior in point of time, and it was neither illegal nor unlawful, but such as is authorized by the laws of congress. If this position be correct, then it was the duty of that court to defend its jurisdiction and protect it from invasion.

The order of the circuit court of the United States, made on the 13th day of January, 1879, at an adjourned term of said court, as the evidence shows, has been referred to as the source of the jurisdiction of the court over the papers in question. But that order did not, and could not, create jurisdiction, and was only directory to the officer, that the jurisdiction already acquired might be made more secure and inviolate against invasion. Will it be seriously argued that the United States marshal, at the command and order of a court of another and different jurisdiction, should despoil and destroy the jurisdiction of the court of which he is a sworn officer? Had he obeyed the order of the city court of Selma, and removed the papers, matters and things beyond and out of the jurisdiction of the circuit court of the United States for the Middle district of Alabama, without the order and authority of that court, he would have made himself justly liable to proceedings for contempt of the court, the jurisdiction of which was thus violated. The cases at bar are, to my mind, clearly within the letter and spirit of section 753 of the Revised Statutes, cited above. The authorities cited in argument are in exposition of this statute, and sustain this view of the subject. Ex parte Jenkins [Case No. 7,259]. Ex parte Robinson [Id. 11,935]. The conclusion is, that these officers were restrained of their liberty for an act omitted to be done in pursuance of a law of the United States, and an order, process and decree thereof.

It is unnecessary to go further, but I will notice one or two points made by the counsel for the state, in opposition to the discharge of the petitioners. It is insisted, and much authority is read to show, that the right of punishing for contempts, by summary conviction, is inherent in all courts of justice,

and that every court is the judge whether a contempt has been committed against it. That proposition is not controverted, but it is equally well settled, that if a court, assuming to pronounce a judgment of contempt, or any other judgment, has no jurisdiction, the judgment is coram non judice and void. The question here is, did the city court of Selma have jurisdiction over the subject matter and over the parties, at the time it assumed to pronounce the judgment? If it had no jurisdiction of the subject matter, to wit, the papers, matters and things described in the subpœna, it could not require their production at the hands of any one. It does not clearly appear, from the record, whether this judgment of contempt was based solely upon the failure of the petitioners to produce the papers, matters and things in question, though the affidavit of Turner, to the effect that he was not required to go before the grand jury, and no questions were asked him touching any violation of law, in his knowledge, within the jurisdiction of the city court of Selma, indicates that the judgment of contempt was based solely upon the failure to produce the papers, matters and things in question, and not upon the failure to appear instanter in person, in response to the subpœna. The subpœnas are for George Turner and Charles E. Mayer, and these gentlemen, like other citizens of the state of Alabama, owe duties of obedience to her laws, and the process of her courts, and the fact that they are officers of the United States will not, and does not, absolve them from the duties which they owe as citizens of the state of Alabama. It cannot be maintained, however, that the duties which they owe, of obedience to the process of the state courts, overbears and overrides their duties as officers of the United States, required, as they are by law, to attend upon the sessions of the courts of the United States, held in the district of their appointments. It appears, from the record of the proceedings of the city court of Selma, that these officers made answer in writing, under oath, to the subpœna served upon them, and informed the court of the official positions which they respectively held, and stated the facts which prevented their attendance in person and instanter upon the city court of Selma, and it appears, from the record, that these returns were before the court when judgment of contempt was pronounced against them. The facts stated by them in their respective answers are not traversed, and it will hardly be contended that the duty of these officers to attend instanter and in person upon the session of the city court of Selma is of higher obligation than their duty, under the laws of the United States, to attend upon the sessions of the courts of the United States, of which they are officers. This is a question of vital importance: it touches the very foundation of the powers and jurisdiction of the federal courts.

Courts cannot exist without officers to conduct their business, serve their process and execute their mandates. If officers of the courts of the United States can be arrested and imprisoned by process from state courts, for alleged violation of state law and authority, for acts done or omitted by them in the execution of the laws of the United States and the orders of her courts, and there is no remedy, then the courts of the United States are liable to constant obstruction in the exercise of their jurisdiction and powers, and their usefulness and efficiency, if not their very existence, is imperiled. It is true that the jurisdiction of the United States is limited and statutory, but it is also true, that wherever their jurisdiction attaches it is within the scope of that jurisdiction supreme and paramount. If that jurisdiction is invaded, or if the officers of the courts are interfered with in the discharge of their duties, the means are not wanting, nor their potentiality doubtful, to vindicate the just authority of the court in the administration of the laws of the United States.

The result of these views is, that the petitioners, George Turner and Charles E. Mayer, must be discharged from custody, and it is so ordered.