Harlan, J.,
delivered the opinion of the court.
On the 29th of May, 1885, William L. Royall filed two petitions in the Circuit Court of the United States for the Eastern district of Virginia, each verified by oath, and addressed to the judges of that court.
In one of them he represents, in substance, that he is a citizen of the United States j that, in June, 1884, as a representative of a citizen of New York — who was the owner of certain bonds issue,d by Virginia under the act approved March 30,1871, entitled “An act to provide for the funding and payment of the public debt” — he sold in the city of Richmond, to Richard W. Maury, for the sum of $10.50 in current money a genuine past-due coupon, cut from one of said bonds in petitioners, presence, and which he received from the owner, with instructions to sell it in that city for the best market price; that said coupon bears upon its face the contract of Virginia that it should be received in pay *538 ment of all taxes, debts and demands due that Commonwealth ; that he acted in said matter without compensation; and consequently, the transaction was a sale of the coupon by its owner.
The petition proceeds:
“That on the second day of June, 1884, the grand iury of the city of Richmond, Virginia, found an indictment against your petitioner for selling said coupon without a license. That the before-mentioned coupon is the only one that your petitioner has sold. That your petitioner was thereupon arrested and committed to the custody of N. M. Lee, sergeant of the city of Richmond, to be tried on said indictment, and that he will be prosecuted and tried on said indictment for selling said coupon without a license,, under the provisions of section 65 of the act of March 15, 1884, relating to licenses generally, and the general provisions of the State law in respect to doing business without a license. That your petitioner had no license under the laws of Virginia to sell coupons. That the act of the General Assembly under which your petitioner was arrested, and is being prosecuted, requires any person who sells one or more of the said tax-receivable coupons issued by said State of Virginia to pay to said State, before said sale, a special license tax of $1,000, and, in addition thereto, a tax of twenty per cent, on the face value of each coupon sold.
“ That said act does not require the seller of any other coupon, or the seller of anything else, to pay said tax, but it is directed exclusively against the sellers of such coupons. That your petitioner is being prosecuted under said act because he sold said coupon without having first paid to said State said special tax of twenty per cent, on the face value thereof. That said act of the Genesal Assembly of Virginia is repugnant to section ten of article one of the Constitution of the United States, and is therefore null and void. That if the said State can refuse to pay the said coupons at maturity, and then tax the sale of. them to tax-payers, she may thus indirectly repudiate them absolutely, and thus effectually destroy their value.
“That your petitioner has been on bail from the time he was arrested until now, but that his bail has now surrendered him, and he is at this time in the custody of t.he said N, M. Lee, sergeant of the city of Richmond, to be prosecuted and tried on said indictment. That he is held in violation of the Constitution of the United States, as he is advised.”
In the other petition he represents in substance, that, under the provisions of the before mentioned act of 1871, Virginia issued her bonds, with interest coupons attached, and bearing upon their face a contract to receive them in payment of all taxes, debts and demands *539 due to that Commonwealth'that another act, approved Januaryl4,1882, provides that said coupons shall not be received in payment of taxes until after judgment rendered in a suit thereon according to its provisions; that the validity of the latter act was sustained in Antoni vs. Greenhow, 107 U. S., upon the ground that it furnished tax-payers with a sufficient remedy to enforce said contract; that by the provisions of §§• 90 and 91 of chapter 450 of the laws of Virginia for the year 1883-84, it is provided that attorneys-at;law who have been licensed to practice-law less than five years shall pay a license tax of fifteen dollars, and those licensed more than five years twenty five dollars, and that such license shall entitle the attorney paying it to practice law in all the-courts of the State; that it is further provided by said 91st section that-no attorney shall bring any suit on said coupons under said act of January 14th, 1882, unless he pays, in addition to the above-mentioned license tax, a further special license tax of $250 ; that petitioner had been licensed to practice law more than five years, and that in the month of' April, 1884, he paid twenty five dollars, receiving a revenue license to practice law in all the courts of the State; but that he had not paid the additional special license tax provided for in said 91stsection; that, underemployment of a client who had tendered coupons, issued by Virginia under the act of March 30th, 1871, to the treasurer of Richmond city in payment of his taxes, and thereafter had paid his taxes in money — the coupons having been received by that officer for identification and verification, and certified to the hustings court of the city of Richmond — he brought suit under the act of January 14th, 1882, to recover the money back after proving the genuineness of the coupons; that the grand jury of the city- of Richmond thereupon found an indictment against him for bringing the suit without having paid the special license tax ; that he brought it after he had paid his license tax above mentioned, and while he had a license to practice law until April, 1885 ; that he was thereupon arrested by order of the hustings court of Richmond, committed to the custody of N. M. Lee, sergeant of that city, and is about to be tried and punished under said indictment; that the act requiring him to pay a'special license tax in addition to his general license tax is repugnant to §10 of article 1 of the Constitution of the United States, and is, therefore, null and void ; and that the act providing for punishing him for not paying the special license tax is likewise repugnant to the Constitution.
After stating, at some length, the ground upon which he contends that the before-mentioned acts are repugnant to the Constitution, the petitioner avers that he “ is now in the custody of the said N. M. Lee, sergeant of the city of Richmond, under said indictment, and he is,, therefore, restrained of his liberty in violation.of the Constitution of the United States.”
*540 Each petition concludes with a prayer that the circuit court award -a writ of habeas corpus directed to that officer, commanding him to produce ■the body of the petitioner before that court, together with the cause of his detention, and that he have judgment discharging him from custody.
In each case the petition was dismissed upon the ground that the circuit court was without jurisdiction to discharge the prisoner from prosecution.
These cases come here under the act of March 3, 1885, c. 353. which so amends §764 of the Revised Statutes as to give this court jurisdiction', upon appeal, to review the final decision of the circuit courts of the United States in certain specified cases, including that of a writ of habeas corpus sued out in behalf of a person alleged to be restrained of his liberty in violation of the Constitution. 23 Stat, 437.
The first question to be considered is, -whether the circuit courts have jurisdiction on habeas corpus to discharge from custody one who is restrained of his liberty in violation of the national Constitution, but who, at the same time, is held under.State process for trial on an indictment charging him with an offense against the laws of the State.
The statutory provisions which control the determination of this question are found in the following sections of the Revised Statutes:
“§751. The supreme court and the circuit and district courts shall have power to issue writs of habeas corpus. '
■“§752. The several justices and judges of the said courts, within their respective jurisdictions, shall have power to grant writs of habeas corpus for the purpose of an inquiry inlo the cause of restraint of liberty.
“753. The writ of habeas corpus shall in no case extend to a prisoner in jail, unless where he is in custody under or by color of the authority of the United States, or is committed for trial before some court thereof; or is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or de.cree of a court or judge thereof; or is in custody in violation of the Constitution, or of a law or treaty of the United States; or being a subject or citizen of a foreign State, and domiciled therein, is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption •claimed under the commission, or order, or sanction of any foreign State, or under color thereof, the validity and effect whereof depend upon the law of nations; or unless it is necessary to bring the prisoner into court ' to testify.
“§754. Application for a writ of habeas corpus shall be made to the •court, or justice, or judge authorized to issue the same, by complaint in writing, signed by the person lor whose relief it is intended, setting .forth the facts concerning the detention of the party restrained, in *541 whose custody he is detained, and.by virtue of what claim or authority, if known. The facts set forth in the complaint shall be verified by the •oath of the person making the application.
“§755.. The court, or justice, or judge to whom the application is made, shall forth with award a writ of habeas corpus, unless it appear from the petition itself that the party is not entitled thereto. The writ shall be directed to the person in whose custody the party is detained.
“ §761. The court, or justice, or judge shall proceed in a summary way to determine the facts in the case, by.hearing the testimony and •arguments, and thereupon to dispose of the party as law and justice require.”
It is further provided, that, pending the proceedings on habeas corpus in ckses mentioned in sections 763 and 764 — which include an application for the writ by a person alleged to be restrained of his liberty in violation of the Constitution of the United States — and, “until final judgment of discharge, any proceeding against the person so imprisoned or confined, dr restrained of his liberty, in any State court, or by or under the authority of any State, for any matter so heard or determined, or in process of being heard or determined, under such writ of habeas corpus, shall be deemed null and void.” §766.
The grant to the circuit courts in §751 of jurisdiction to issue writs of habeas corpus, is in language ,as broad as could well be employed. While it is attended by the general condition, necessarily implied, that the authority conferred must be exercised agreeably to the principles and usages of law, the only express limitation imposed is, that the privilege of the writ shall not be enjoyed by — or, rather, that the courts and the judicial officers named, shall not have power to award the writ to — any prisoner in jail, except in specified cases, one of them being •where he is alleged to be held in custody in violation of the Constitution. The latter class of cases was first distinctly provided for by the act of February 5, 1867, c. 28, (14 Stat. 634), which declares that the several courts of the United States, and the several justices and judges ■thereof, within their {respective jurisdictions, in addition to ,tho authority then conferred by law, “ shall have power to grant writs of habeas corpus where any person may be restrained of his or her liberty in violation of the Constitution, or any treaty or law of the United ■States.” Whether, therefore, the appellant is a prisoner in jail within the meaning of §753, or is restrained of his liberty by an officer of the •law executing the process of a court of Virginia, in either case, it being alleged under oath that he is held in custody in violation of the Constitution, the circuit court has, by the express words of the statute, jurisdiction on habeas corpus to inquire into the cause for which he is restrained of his liberty, and to dispose of him “as law and justice re. ■quire-”
*542 It may be suggested that the State court is competent to decide whether the petitioner is or is not illegally restrained of his liberty; that the appropriate time for the determination of that question is at the trial of the indictment; and that his detention for the purpose simply Of securing his attendance at the trial, ought not to be deemed an improper exercise by that court of its power to hear and decide the case. The first of these propositions is undoubtedly sound; for, in Robb vs. Connolly, 111 U. S. 687, it was held, upon full consideration, that “ a State court of original jurisdiction, having the parties before it, may,, consistently with existing Federal legislation, determine cases at law or in equity, arising under the Constitution and laws of the United States, or involving rights dependent upon such Constitution or laws and that “upon the State courts, equally with the courts of the Union, rests the obligation to guard, enforce and protect every right granted or secured by the Constitution of the United States, and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them.” But with respect to the other propositions, it is clear, that, if the local statute under which Loyall was indicted be repugnant to the Constitution, the prosecution against him has nothing upon which to rest, and the entire proceeding against him is a nullity. As was said in ex parte Siebold, 100 U. S. 376: “An unconstitutional law is void, and is as no law. An offense created by it is no crime. A conviction und.er it is not merely erroneous, but is illegal and void, and’ cannot be a legal cause of imprisonment.” So, in ex parte Yarborough,. 110U. S- 654, it was said that if the statute prescribing the offense for which Yarborough and his associates were convicted was void, the court which tried them was without jurisdiction, and they were entitled to-be discharged, It would seem — whether reference be had to the act of 1867, or to existing statutory provisions — that it was the purpose of Congress to invest the courts of the Union, an,d the justices and judges-thereof, with power, upon writ of habeas corpus, to restore to liberty any person, within their respective jurisdictions, who is held in custody, by whatever authority, in violation of the Constitution or any law or treaty-of the United States. The statute evidently contemplated that cases-might arise when the power thus conferred should be exercised, during the progress of proceedings instituted against the petitioner in a State court, or by or under authority of a State, on account of the very matter presented for determination by the writ of habeas corpus, for, care is taken to provide that any such proceedings, pending the hearing of the case, upon the writ, and until final judgment, and after the prisoner is-discharged, shall be null and void. If such were not the clear implication of the statute, still, as it does not except from its operation cases *543 in which the applicant for the writ is held in custody by the authority •of a State, acting through its judiciary or by its officers, the court could not, against the positive language of Congress, declare any such exception, unless required to do so by the terms of the Constitution itself. But, as the judicial power of the nation extends to all cases arising under the Constitution, the laws and treaties of the United States; as the privilege of the writ of habeas corpus cannot be suspended unless when in cases of rebellion or invasion the public safety may require; and as •Congress has power to pass all laws necessary and proper to carry into •execution the powers vested by the Constitution in the government of the United States, or in any department or officer thereof; no doubt can exist as to the power of Congress thus to enlarge the jurisdiction of the courts of the Union and of their justices and judges. That the petitioner is held under the authority of a State cannot affect the question of the power or jurisdiction of the circuit court to inquire into the cause of his commitment and to discharge him, if he be restrained of his liberty in violation of the Constitution. The grand jurors who found the indictment, the court into which it was returned and by whose order he was arrested, and the officer who holds him in custody, are all, equally with individual citizens, under a duty, from the discharge of which the •State could not release them, to respect and obey the supreme law of the land, “ anything in the Constitution and laws of any State to the contrary notwithstanding.” And that equal power does not belong to the courts and judges of the several States; that they cannot, under any authority conferred by the States, discharge from custody persons held by authority of the courts of the United States, or of commissioners of such courts, or by officers of the general government acting under its laws, results from the supremacy of the Constitution and laws of the United States. Ableman vs. Booth, 21 How. 506; Tarble’s Case, 13 Wall. 397; Robb vs. Connolly, 111 U. S. 639.
We are, therefore, of opinion that the circuit court has jurisdiction upon writ of habeas corpus to inquire into the cause of appellant’s commitment, and to discharge him, if he be held in custody in violation of the Constitution.
It remains, however, to be considered, whether the refusal of that court to issue the writ and to take the accused from the custody of the State officer can be sustained upon any other ground than the one upon which it proceeded. If it can be, the judgment will not be reversed because an insufficient reason may have been assigned for the dismissal of ’the petitions.
Undoubtedly tbe writ should be forthwith awarded, “unless it appears from the petition itself that the party is not entitled thereto •and the case summarily heard and determined “as law and justice re *544 quire.” Such are the express requirements of the statute. If, however,, it is apparent upon the petition, that the writ if issued ought not, on principles of law and justice, to result in the immediate discharge of the accused from custody, the court is not bound to- award it as soon as the application is made. Ex parte Watkins, 3, Pet. 193-, 201; Ex parte Milligan, 4 Wall. 3, 111. What law and justice may require, in a particular case, is often an embarrassing question to a court or to the judicial officer before whom the petitioner is brought. It is alleged in the-petitions — neither one of which, however, is accompanied by a copy of the indictment in the State court, nor by any statement giving a reason why such a-copy was not obtained — that the appellant is held in custody under process of a State court in which he stands indicted for an alleged offense against the laws of Virginia. It is stated in one case-that he gave bail, but was subsequently surrendered by his sureties. But it is not alleged and it does not appear, in either case, that he is-unable to give security for his appearance in the State court, or that reasonable bail is denied him, or that his trial will be unnecessarily delayed. The question as to the constitutionality of the law under which he is indicted must necessarily arise at his trial under the indictment, and it is one upon which, as we have seen, it is competent for the State court to pass. Under such circumstances, does the statute imperatively require the circuit court, by writ of habeas corpus, to wrest the petitioner from the custody of the State officers in advance of his-trial in the State court? We are of opinion that while thé circuit court has the power to do so, and may discharge the accused in advance of his trial if he is restrained of his liberty in violation of the national Constitution, it is not bound in every case to exercise such power immediately upon application being made for the writ. We cannot suppose that Congress intended to compel those courts, by such means, to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in the State courts exercising authority within the-same territorial limits, where the accused claims that he is held in custody in violation of the Constitution of the United States. The injunction to hear this case summarily, and thereupon “to dispose of the party as law and justice require,” does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals-of the Union, and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflicts between the courts equally bound to guard and protect rights secured by the Constitution. When the petitioner is in custody^ *545 by State authority for an act done or omitted to be done in pursuance of a law of the United States, or of an order; process or decree of a court or judge thereof; or where, being a subject or citizen of a foreign-State, and domiciled therein, he is in custody, under like'authority, for-an act done or omitted under any alleged right, title, authority,-privilege, protection, or exemption claimed under the commission, or order, or sane-' tion of any foreign State, or under color thereof, the validity and effect whereof depend upon-the-law 6f- nation^;-in such and like cases of urgency, involving the authority and operations of the general government, or of the obligations of this country to, or its relations with, foreign nations, the courts of the United States have frequently interposed by writs of habeas corpus and discharged prisoners who were held in custodj3 under State authority. So, also, when they are in the custody of a State officer, it may be necessary, by use of the writ, to bring them into a court of the United States to testify as witnesses.
The present cases involve no such considerations; Nor do their circumstances, as detailed in the petitions, suggest any reason why the state court of original jurisdiction may not, without interference upon the part of the courts of the United States, pass upon the question which is raised as to the constitutionality of the statutes under which the appellant is indicted. The circuit court was not at liberty3:, under the circumstances disclosed, to presume that the decision of the state court would be otherwise than is required by3- the fumental law of the land, or that it would disregard the settled principles of constitutional law announced by this court, upon which is clearly conferred the power to decide ultimately and finally all cases arising under the Constitution and laws of the United States. In Taylor vs. Carryl, 20 How. 595, it was said to be a recognized portion of the duties of this court — and,, we will add, of all other- courts, national and state — “to. give preference to such principles and methods of procedure as shall seem.to conciliate the distinct and independent tribunals of the states and of the Union, so that they may co-operate as harmonious members of the judicial system co-exten-sive with the United States, and submitting to the paramount authority of the same Constitution, laws, and Federal obligations.”' And in Covell vs. Heyman, 111 U. S. 182, it was declared “that the forbearance which oourts of co ordinate jurisdiction, administered under a single system, exercise towards each„other, whereby conflicts are avoided, by avoiding interference with the process of the other, is a principle of comity, with, perhaps, no higher sanction than the utility which comes from concord;-, but between state courts and those of the United States it is something more. It is a principal of right and of law, and, therefore, necessity.”
That these salutary principles may have full operation, and in harmony with what we suppose was the intention of congress in the en- *546 .actments in question, this courts holds that where a person is in custody, Tinder proces from a state court of original jurisdiction, for an alleged •offense against the laws of such state, and it is claimed that he is restrained of his liberty in violation of the Constitution of the United ¡States, the circuit court has a discretion, whether it will discharge him, •upon habeas corpus, in advance of his trial in the court in which he is indicted; that discretion, however, to be subordinated to-any special circumstances requiring immediate action. When the state court shall have ¡finally acted upon the case, the circuit court has still a discretion whether, under all the circumstances then existing, the accused, if convicted, ¡shall be put to his writ of error from the highest court of the state, or •whether it will proceed, by writ of habeas corpus, summarily to determine •whether the petitioner is restrained of his liberty in violation of the ‘Constitution of the United States. The latter was substantially the course adopted in esparte Bridges, 2 Woods, 428. The prisoner was in•dicted and convicted in one of the courts of Georgia for perjury committed in an examination before a United States commissioner under what is known as the Enforcement Act of congress. He was discharged upon habeas corpus, sued out before Mr. Justice Bradley, upon the ground that ¡the state court had no jurisdiction of the case, the offense charged being •one which under the laws of the United States, was exclusively cognizable in the Federal courts. Adverting to the argument that where a defendant has been regularly indicted, tried, and convicted in a state court, his only remedy was to carry the judgment to the state court of last resort, and thence by writ of error to this court, he said: “This might be so if the proceeding in the state court was merely erroneous; but where it is void for want of of jurisdiction, habeas corpus will lie, and ¡may be issued by any court or judge invested with supervisory jurisdiction in such case. Ex parte Lange, 18 Wall. 163.” It was further observed, in the same case, that while it might appear unseemly that a prisoner, after conviction in a state court, should be set at liberty by a single judge on habeas corpus, there was no escape from the act of 1867, which invested such judge with power to discharge when the prisoner was restrained of his liberty in violation of a law of the United States.
As it does not appear that the circuit court might not, in its discretion and consistently with law and justice,‘have denied the applications for the writ at the timé they were made, we are of opinion that the judgment in each, case must be affirmed, but without prejudice to the right of the petitioner to renew his applications to that court at some future time, should the circumstances render it proper to do so.
Note. — In its proper domain the national government is superior to the state government, yet neither can intrude into the domain of the *547 other, except where in cases of conflict of authority such intrusion may be necessary on the part of the national' government to preserve its rightful supremacy.*
For a long period of time congress was very careful in its legislation to avoid all possibility of conflict between the national and state courts. The national courts were prohibited from issuing injunctions against proceedings in state courts, and it was decided, that they-could not indirectly enjoin such proceedings by enjoining the litigants. † It was equally careful in habeas corpus proceedings, -ind allowed the writ to run in favor of prisoners in jail, only when they were held under or by color of the authority of the United States. Owing to the nullification proceedings of 1883, the writ was allowed to any person imprisoned for an act done or omitted in pursuance of a law of the United States or of an order of a U. S. Court or of a judge thereof.
The Canadian troubles caused the act of 1842 to be pased extending the writ to aliens in prison, who claim to have acted under the orders of their own government. The civil war was the cause of the act of 1867, extending the provisions of the writ to persons in custody in violation of the Constitution or of a law or treaty of the United States. ‡ The language of the act is very sweeping, and authorizes the discharge of a prisoner in custody of a state court or even serving out a sentence of such court. This power is permissible to the United States courts because of their superiority to the state courts, and for the same reason state courts cannot interfere by habeas corpus with the proceedings of the United States courts. ||
Writ of Error — Correction of Errors. — The writ of habeas corpus was never intended to operate as an appeal or writ of error. On a writ of ■habeas corpus the court will only inquire, whether the court, under whose process the prisoner is held, had jurisdiction over the person or the cause, or whether there is some other matter rendering its proceeding void. ¶
Habeas Corpus — Mature of Proceedings. — Proceeding to enforce civil rights are civil proceedings, consequently a habeas corpus proceeding is a civil proceeding. **
When Writ not Allowed. — When the court, which holds the prisoner, has jurisdiction of the party and is charged with the trial of such cases, the prisoner will not be discharged because he has a good defense. He will be left to avail himself of his defense at his trial. ††
*548 Can a Court Refuse to Discharge the prisoner if his Case Comes hnder the Provisions of the Zato. — The district and circuit courts of the United States ' seem to have considered themselves bound to discharge prisoners when their cases came under the provisions of the law; they seem not to have-considered our dual form of government or the courtesy due to the state courts. They discharged the prisoners, whether held by preliminary-commitment, or under sentence for contempt of court, or serving out-their sentences under the -judgment. * In one case the prisoner was not discharged, but the court admitted that the legal points involved were doubtful, and the supreme court of the state had passed on the question, and had come to a different conclusion. †
The writ of habeas corpus is a high prerogative writ, and is considered a bulwark of our liber-ies. It secured by magna charta, and the effort of the authorities to avoid issuing it, and to delay its enforcement, led to the act of Charles 1st on that subject, and to that of 31st Charles 2d, which has been palled a new magna charta. The law says the court-shall forthwith award the writ, shall proceed in a summary way to determine the facts, and“thereupou to dispose of the party as law and justice require.’' This evidently means that the decision shall be rendered as soon as practicable after the evidence is heard. What do law and justice require? That the prisoner shall be discharged, if the law covers his case. Justice is blind,and pays equal deference to the humblest as to-the highest. Is it law or justice to hear the prisoner’s case, and to admit he is wrongfully detained, and, with the power and command to act according to law’ and justice, to remand him with the statement that hereafter another tribunal will listen to his cause, and no doubt will do him justice; and, if not, then he may appeal to another tribunal, or possibly we will then discharge him ourselves.
By what reasoning does the court arrive at its conclusion? It says, “If it is apparent upon the petition that the writ, if issued, ought not, on principals of.law and justice, to result in the immediate discharge of the accused from custody, the court is not bound to award it as soon as the application is made. Ex parte Watkins, 3 Pet 193, 201; Ex parte Milligan, 4 Wall. 3, 111.’’ We cannot find that inference in those cases. As we understand them, the facts all appeared by the petitions, so the- *549 court saved time by deciding the cases on the petitions, in one case deciding that' the prisoner was not entitled to a discharge, and in the other that he was.
In the principal case the opinion says the court can exercise, a discretion, and should try to avoid any clash with the state courts, and can conclude to leave the matter with the state court. The legislative branch of the government makes the laws, and is the arbiter in questions of courtesy. The courts must enforce the laws as they find them, and certainly this law is peremptory. It may be admitted, that it would be well for congress to altar the law. According to this decision the court is authorized to grant or refuse the writ at its pleasure, and no applicant can tell in advance, whether, with no dispute as to the facts, he will obtain it. An intimation is thrown out, that in important causes, or in international questions, it should be granted. The right to be discharged from illegal confinement by the writ of habeas corpus, in the case of even the humblest of our citizens, is not an unimportant matter,-or else we have not read the history of the English peoples aright. — 8. S. Merrrill, in Central Law Journal.

 Tflrhlp Case 13 Wall 397

 Haines vs. Carpenter, 91 U. S. 254; Dial vs. Reynolds, 96 U. S. 340.

 Ex parte Bridges, 2 Woods, 428.

 Tarble’s Case supra; Ableman vs. Booth, 21 How. 506.

 Ex parte Siebold, 100 U. S. 371; Ex parte Virginia, Id. 339; Exparte Rowland, 104 U. S. 604; Ex parte Curtis, 106 U. S. 371; Ex parte Yarbrough, 100 U. S. 651; Ex parte Kenyou, 6 Dill. 385; Ex parte Watkins, 3 Pet. 193; Ex parte Lange, 18 Wall. 162; Ex parte Parks, 3 Otto, 18; Ex parte Reed, 110 U. S. 656.

 Ex parte Tom Tong, 108 U. S. 556.

 Ex parte Crouch, 112 TJ, S 178.

 Laundry Ordinance Case. 7 Sawy. 531; In re Wong Yung Quy, 6 Sawy. 237; Ex parte Bridges, 2 Woods, 428; Ex parte Turner, 3 Woods, 603; In re Tie Loy, 26 Fed. Rep. 611; Ex parte Kenyon, 5 Dill. 385; Electorial College of South Carolina, 1 Hughes, 571; United States vs. Jailor of Fayette Co., 2 Abb. U. S. 265; Ex parte Jenkins, 2 Wall. Jr. C. C. 521, 539; Ex parte Robinson, 6 McLean, 355; United States vs. Morris, 2 Am. Law Reg. 348.

 In re Wo Lee, 26 Fed. Rep. 471.