*In re* BEINE. *In re* JOCKHECK. *In re* SCHMIDT. *In re* DEISHER. *In re* ZINN. *In re* COPP. *In re* YOUNT. *In re* SICHER. *In re* TUCHMAN. *In re* RAHRER. *In re* BEIL.

(*Circuit Court, D. Kansas.* June 14, 1890.)

INTOXICATING LIQUORS—ILLEGAL SALE—ORIGINAL PACKAGES—HABEAS CORPUS.

The laws of Kansas prohibiting the sale of intoxicating liquors within the state being void, as in contravention of the interstate commerce clause of the federal constitution, in so far as they apply to sales by an agent of an importer outside of the state of liquor in the original packages in which it was brought into the state, without regard to the size of such packages, an agent imprisoned for such sales is deprived of his liberty in violation of the constitution of the United States, and will be discharged by the circuit court on *habeas corpus.*

Habeas Corpus.

*Wheat, Chesney & Curtis, David Overmeyer, Hazen & Izenhart, Eugene Hagan, J. M. Sheafor, Wm. Warner,* and *H. M. Call,* for petitioners.

*A. H. Vance, R. B. Welch,* and *T. F. Garver,* for respondents.

CALDWELL, J. Eleven persons have separately petitioned this court for writs of *habeas corpus* to relieve them from alleged imprisonment in violation of the constitution of the United States. The cases were heard together; and, while there is some difference in the minor details, the material and controlling facts are the same in all the cases. Prosecutions were instituted against the petitioners charging them with selling liquor in violation of the laws of this state. They were arrested, and, failing to give bail, were committed, and thereupon filed their petitions in this court alleging that they were imprisoned, in violation of the constitution of the United States, in virtue of criminal prosecution commenced against them severally in the state courts of Kansas for selling liquor in that state in alleged violation of its constitution and laws; that the liquor for the selling of which they were prosecuted and imprisoned was shipped by its owners, who were citizens and residents of the state of Missouri, from that state into this state, and sold by the petitioners, as agents of such shippers and importers, in the original packages in which it was shipped by its owners into this state; that they sold liquor in no other manner; and that, so far forth as the constitution and laws of this state make such sales of liquor a crime, they are in conflict with the commercial clause of the constitution of the United States, and void.

The uncontradicted evidence supports the allegations of the petitions, namely, that certain persons and firms residing and doing business in the state of Missouri owned and shipped from that state into this state distilled liquors and beer, and that the petitioners, as agents for said shippers and importers, sold said liquor in this state in the original packages in which it was shipped into the state by its owners, and sold liquor in no other manner.

With an exception not material to be considered in this case, the constitution and laws of this state make it a crime for any person to sell liquor in this state. The constitution and laws of the state make no dis-

v.42F.no.11—35

·tinction between the importer who sells in the original packages, and one who sells in broken packages or by the glass. The law inflicts the same penalty on both. Every question of law raised in these cases has been decided by the supreme court of the United States. That court in a recent decision [*Leisy* v. *Hardin*, 10 Sup. Ct. Rep. 681] says:

"That ardent spirits, distilled liquors, ale, and beer are subjects of exchange, barter, and traffic, like any other commodity in which a right of traffic exists, and are so recognized by the usages of the commercial world, the laws of congress, and the decisions of courts, is not denied. Being thus articles of commerce, can a state, in the absence of legislation on the part of congress, prohibit their importation from abroad, or from a sister state? Or, when imported, prohibit their sale by the importer?"

These questions the court answered in the negative, and that answer is conclusive on this and all other courts in this country; the court, referring to the laws of Iowa, which, like the laws of this state, make it unlawful for the importer to sell, said:

"The plaintiffs in error are citizens of Illinois, are not pharmacists, and have no permit, but import into Iowa beer which they sell in original packages, as described. Under our decision in *Bowman* v. *Railway Co.*, 125 U. S. 507, 8 Sup. Ct. Rep. 689, 1062, they had the right to import this beer into that state; and, in the view which we have expressed, they had the right to sell it, by which act alone it would become mingled in the common mass of property within the state. Up to that point of time, we hold that, in the absence of congressional permission to do so, the state had no power to interfere by seizure or any other action in prohibition of importation and sale by the foreign or non-resident importer." "The legislation in question is to the extent indicated repugnant to the third clause of section 8, art. 1, of the constitution of the United States."

It was then no offense for these petitioners to sell liquor in the original packages as agents for the non-resident importers and owners. Having a right to make such sales under the constitution of the United States as construed by the supreme court of the United States, any imprisonment of them for doing that act is, in the language of the *habeas corpus* act, "in violation of the constitution" of the United States, and illegal; and this court has the jurisdiction, and it is made its duty, to discharge any person so illegally held in custody. *Ex parte Royall*, 117 U. S. 241, 6 Sup. Ct. Rep. 734; *Cunningham* v. *Neagle*, 10 Sup. Ct. Rep. 658; *Ex parte Kieffer*, 40 Fed. Rep. 399; *In re Barber*, 39 Fed. Rep. 641, 10 Sup. Ct. Rep. 862. A question was raised in the argument as to whether the smallness of some of the packages sold by some of the petitioners did not deprive them of the protection given to vendors of original packages. Single bottles of beer and whisky, packed and sealed or nailed up in boxes made of pasteboard or wood, were shipped and sold in that shape. The boxes containing one bottle were not packed in any other box, but shipped singly and separately as so many distinct and separate packages. It is not perceived why, in the absence of a regulation by congress to the contrary, the importer may not determine for himself the form and size of the packages he puts up for export. The idea that small packages of liquor cannot be treated as original packages,

because they are small, springs from the conviction back of it that liquor in any form, or in any sized package, is not a legitimate subject of commerce. That question is put at rest by the decision of the supreme court of the United States until congress shall act. As long as packages of liquor in any form or size may lawfully be sold by the importer or his agent in a prohibition state, the size of the package is not of much consequence. Whether the packages be large or small, the practical effect will be to seriously impair the efficacy of all laws intended to protect society from the evils of the liquor traffic. It was foreseen that this would be the consequence of the decision of the supreme court. Mr. Justice GRAY, in his dissenting opinion, anticipated as a result of the decision of the court the very state of things now confronting the people of this state. He says:

"If the statutes of a state restricting or prohibiting the sale of intoxicating liquors within its territory are to be held inoperative and void as applied to liquors sent or brought from another state, and sold by the importer in what is called 'original packages,' the consequence must be that an inhabitant of any state may, under the pretext of interstate commerce, and without license or supervision of any public authority, carry or send into and sell in any and all of the other states of the Union intoxicating liquors, of whatever description, in cases or kegs, or even in single bottles or flasks, despite any legislation of those states on the subject, and although his own state should be the only one which had not enacted similar laws."

The answer of the court to this suggestion is that congress, and congress alone, can provide a remedy for the evil so forcibly stated by the minority of the court. The court said:

"The responsibility is upon congress, so far as the regulation of interstate commerce is concerned, to remove the restriction upon the state in dealing with imported articles of trade within its limits which have not been mingled with the common mass of property therein, if in its judgment the end to be secured justifies and requires such action."

I do not sit here either to make or to disregard the law, but to enforce it regardless of my own views of its policy or justice. It is to the legislative, and not to the judicial, department of the government that the people of this and all other states must look for relief against the evils of the sale of liquor in original imported packages by the importer or his agents. The several petitioners must be discharged. Let a prayer for appeal and its allowance be entered in each case. The stenographer will file with the clerk the testimony in all the cases; and the testimony relating to each case will be filed and attached to, and made a part of, the record in the case.