**UNITED STATES of America,**

**v.**

**Farhad BAKHTIAR, Defendant.**

**No. 91 Cr. 782 (LLS).**

United States District Court,
S.D. New York.

March 4, 1997.

United States Attorney, Southern District of New York, New York City (David C. Esseks and Robert R. Strang, of counsel), for U.S.

Paul B. Bergman, P.C., New York City (Paul B. Bergman, of counsel), for Defendant.

### OPINION

STANTON, District Judge.

This case has taken an unusual procedural course after the imposition of sentence and presents a question of the extent to which service of defendant's previously-imposed sentence is lawful under the terms of his extradition from Switzerland.

*Extradition and Application
for Re-sentence*

Defendant Farhad Bakhtiar was convicted in April 1992 of counts one through thirteen of a superseding indictment charging him with conspiracy, bank fraud, wire fraud, money laundering, illegal monetary transactions using the proceeds of criminal activity, and possession and transportation of forged and counterfeit bank checks. He was sentenced to 46 months imprisonment, three years supervised release, a fine and restitution. He was admitted to bail and given permission to travel to Switzerland (his country of residence at the time) during the pendency of his appeal.

While his appeal in this country was pending, Mr. Bakhtiar was arrested and convicted on unrelated charges in Switzerland. He was detained there until he finished serving

his Swiss sentence in July 1995. In the meantime, the United States Court of Appeals for the Second Circuit affirmed his conviction here, *United States v. Bakhtiar*, 994 F.2d 970 (2d Cir.1993), and the United States Embassy in Switzerland applied for his extradition under the United States–Swiss Extradition Treaty of May 14, 1900, 31 Stat.1928 (with amendments, the "Treaty"). The Embassy's request stated

> Fraud offenses are covered by article II(6) of the 1900 Treaty, as amended by the Supplementary Treaty of January 10, 1935. Conspiracy ("participation in") to commit an extraditable offense is covered by article III of the 1900 Treaty.

(Letter from U.S. Embassy in Bern, Switzerland to Federal Dep't of Justice and Police of the Swiss Confederation, No. 65, at 3 (Aug. 9, 1993) (Affirm. in Supp. of Def.'s Motion, Ex. G) [hereinafter "extradition request"].)

The Swiss Federal Court's judgment dated September 29, 1994 allowed Mr. Bakhtiar's extradition for the counts other than those for money laundering, monetary transactions and fund transfers (counts 6, 11–13) which the Swiss Court said were "intended to recycle" the funds; it ruled that the United States "should have a new sentence passed by the competent jurisdiction, sanctioning exclusively the [remaining] charges number 1–5 and 7–10."

In July 1995, on completion of his sentence in Switzerland, Mr. Bakhtiar was delivered to authorities in this country. On both sides' understanding of the Swiss Court's judgment, the government and the defense applied and appeared promptly before this court for re-sentencing on the non-money-laundering offenses.

At that point it became clear that this case was different from the vast majority of cases involving extradition under the "doctrine of specialty."[1] In all but rare cases extradition occurs before trial, and the doctrine of specialty thus controls the charges on which trial will be held.

---

1. Under the doctrine of specialty, the asylum state may refuse to extradite on charges that are not crimes in that state.

In this case, the trial was over. Judgment had been entered, appealed and affirmed. The terms of extradition were in conflict with a valid domestic judgment, and court judgments are not alterable at will by the executive department. Further, re-sentencing seemed forbidden not only by a statute which states that the "court may not modify a term of imprisonment once it has been imposed" except upon circumstances inapplicable here, 18 U.S.C. § 3582(c), but also under our constitutional separation of powers. As I stated

The treaty involved here is of course the supreme law of the land. But it doesn't contain any procedures, and it does not deal with the internal divisions of governmental power within the contracting state. Its effect is only to require that Mr. Bakhtiar not be punished for the money laundering offenses.

Under our constitution, it is the executive department which prosecutes and which punishes. It is the executive department which agreed with Switzerland on the terms on which the executive department got Mr. Bakhtiar back, and it is the executive department which will imprison him.

The suggestion has been made that, because of that deal between the executive department and the Swiss government, the Court should resentence Mr. Bakhtiar. One of the purposes of this conference is to ask you to consider whether that suggestion raises a question under our constitutional separation of powers.

The sentence passed on Mr. Bakhtiar was the final judgment of the court having jurisdiction. It was affirmed on appeal. There is no further open avenue offered me.

So the judgment stands as a conclusive adjudication, binding every department of our government. It is not subject to alteration, except under particular circumstances, which do not apply here. And its terms are not a medium of exchange or barter to be traded out as suits the executive department in whatever negotiation, for the executive department has no power to compel a court to alter its judgment. Nothing in the treaty gives such power. The applicable statute forbids it.

None of the facts underlying the conviction and sentence have changed. The judgment was not in error when it was imposed, and it is not in error now. All that has happened is that the executive department has made an arrangement, pursuant to a treaty, which has disabled the executive department from requiring Mr. Bakhtiar to serve a portion of his sentence. Because of the conditions under which the executive department obtained custody of him, it cannot lawfully imprison Mr. Bakhtiar for the full period of his sentence.

There is nothing unusual in convicts being released by the executive department before they have served their full term. It happened routinely before the recent reformation of the system for calculation of sentences, and it happens routinely, although to a lesser extent, with good time credits now. Indeed, the executive department has the power to pardon.[2] No public or private policy will be violated by the timely release of Mr. Bakhtiar by the executive department in keeping with the agreement the executive department made with the Swiss authorities. None of that requires or provides jurisdiction for an alteration of the final judgment of the judicial department.

Now that being said, there remains the question, when should the executive department let him go? Of course, that is, in the first instance, a matter to be determined by the executive department, who negotiated the arrangement with the Swiss authorities, and should know what the agreement means. In any event, he cannot be imprisoned for longer than the law allows. And for that, the great writ of habeas corpus stands as guarantor, just as it did in the *Johnson* case.[3] So if the guideline calculation yields a sentencing range of 24 to 30 months, as Mr. Bergman says it does, it would surely be unlawful

---

2. Written as "depart" in the transcript.

3. *Johnson v. Browne*, 205 U.S. 309, 27 S.Ct. 539, 51 L.Ed. 816 (1907).

for the executive department to hold him for longer. As the 24th month approached, the executive department should expect an application for habeas corpus, and, on the present record, should not be surprised if it were to be granted.

(Tr. of Jan. 29, 1996, at 2–5.)

■ Now, a year later, the parties reappear before the court. Defendant, perceiving that the end of his lawful confinement has arrived or is close, moves for release[4] or other relief by way of habeas corpus, or under 28 U.S.C. §§ 2241 and 2255. This procedure is clearly appropriate. Section 2241(c)(3) extends habeas corpus to a prisoner "in custody in violation of the Constitution or laws or treaties of the United States" and section 2255 provides that a prisoner claiming the right to be released on the ground that his sentence is "otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." *See also United States v. Rauscher,* 119 U.S. 407, 431, 7 S.Ct. 234, 246, 30 L.Ed. 425 (1886):

> If the party, however, is under arrest and desires a more speedy remedy in order to secure his release, a writ of *habeas corpus* from one of the Federal judges or Federal courts, issued on the ground that he is restrained of his liberty in violation of the Constitution or a law or a treaty of the United States, will bring him before a Federal tribunal, where the truth of that allegation can be inquired into, and, if it be well founded, he will be discharged. *Ex parte Royall,* 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868.

*Length of Lawful Incarceration*

The issue is whether money laundering should be taken into account as an object of the conspiracy count, which is one of the counts on which Mr. Bakhtiar was extradit-

ed. Money laundering is not a crime in Switzerland. The parties agree that if it is not taken into account the total offense level is 17, which yields a sentence range of 24–30 months.[5] On the other hand, if the money laundering object of the conspiracy is utilized, the total offense level is 23, and the sentence range is 46–57 months.[6] In the latter event no further order need be entered, since his original sentence was 46 months.

The government's contention (somewhat oversimplified) is that conspiracy is one of the charges on which Mr. Bakhtiar was extradited, and that the Sentencing Guideline punishes conspiracy by looking to whichever purpose of the conspiracy carries the highest offense level (here it is money laundering). That calculation, the government says, punishes only the crime of conspiracy, and (despite the use of the money-laundering conduct as a basis) does not punish the crime of money laundering in a manner that violates the terms of the extradition. Although the treaty would prevent Bakhtiar being punished for a money-laundering *offense,* the government argues, it does not prevent his punishment for conspiracy in a manner that takes into account his money-laundering *conduct.* The result would be that no change need be made in the present sentence, which included the substantive money-laundering counts.

■ That approach ignores the principle behind the extradition treaty: the principle of "double incrimination." Double incrimination requires that, before extradition will be granted, the offense for which defendant is extradited must be a crime under the laws of both the requesting and the extraditing states. As expressed in the Treaty's Article II:

> Extradition shall be granted for the following crimes and offenses, provided they are

---

**4.** When making the motion Bakhtiar thought there were grounds for a downward departure which might gain him immediate release. In the course of the briefing, he has candidly recognized (accurately) that the government has the better argument on that score.

**5.** Base offense level for fraud is 6, plus 11 levels for the dollar amount involved. A two-level up-

ward adjustment for "more than minimal planning" is offset by a two-level downward adjustment for his minor role in the offense.

**6.** Base offense level for money laundering is 20, plus 5 levels for the dollar amount involved, minus 2 levels for his minor role in the overall schemes.

punishable both under the laws of the place of refuge and under those of the State making the requisition. . . .

It is significant for this case that the principle of double incrimination is expressly repeated in Article III, which deals with attempts and "participation." The significance lies in the fact that "participation" to the Swiss includes the concept we treat as conspiracy. As to such matters, Article III of the Treaty provides:

Extradition shall likewise be granted for an attempt to commit, or participation in, any of the crimes and offenses enumerated in Article II, provided such attempt or participation is punishable in the United States as a felony, and in Switzerland with death, or confinement in a penitentiary or workhouse.

Under Article III, extradition is granted only if the "participation" related to a listed extraditable crime, which does not include money laundering. Thus, a charge of conspiracy to launder money would not be extraditable under the Treaty.

■ The question whether an offense under our law is sufficiently the same as the crime for which the fugitive was extradited is not to be answered by a technical analysis of United States law, but by considering how the extraditing sovereign would view the matter, based upon the general character of the crime. *See United States v. Sturtz*, 648 F.Supp. 817, 819 (S.D.N.Y.1986):

In determining whether a separate offense has been added, this Circuit does not use a technical standard. "[T]he test whether trial is for a 'separate offense' should be not some technical refinement of local law, but whether the extraditing country would consider the offense actually tried 'separate.'" [*United States v.*] *Paroutian*, 299 F.2d [486] at 490–91 [2d Cir. 1962]. The general character of the crime for which the fugitive was extradited is used to determine whether a superseding indictment adds a separate offense.

*Accord Fiocconi v. Attorney General of the United States*, 462 F.2d 475, 481 (2d Cir. 1972).

The September 29, 1994 decision of the Swiss Federal Court recognized that cooperation under the Treaty should not be impaired by differences between the countries' juridical systems. It accordingly treated as of no importance that our law views conspiracy to commit a crime as a separate offense from the crime, while under Swiss law it is regarded as a "punishable preparatory" deed which is "wrapped up" or included in the substantive offense. As the Swiss court stated:

the cooperation laid down by the Treaty should not be hindered by the differences existing between the juridical systems of both States; Thus, in particular, it is of no importance that the foreign law sanctions several distinct infractions for deeds which, according to the Swiss Law, form one single infraction; The extradition is therefore allowed both for punishable preparatory deeds and the infraction carried out, and this, even in the case where, according to the Swiss Law, the former are considered as wrapped up by the latter (Federal Court Judgement 108 Ib 532 consid. 5; Judgement mentioned dated December 21st, 1977 in the case C., consid. 7c/aa).

ATF Ia 123 (Sep. 29, 1994) (Affirm. in Supp. of Def.'s Motion, Ex. H, at 5).

So the Swiss Federal Court allowed extradition for such "preparatory deeds" as formed part of the extraditable offense. It stated:

Thus, the Federal Court has already admitted that the extradition should be allowed for such preparatory deeds, subordinately to the extradition allowed for the attempted infraction or the one wholly achieved; It has judged that according to the Swiss juridical system, this extradition would in any case authorize the Justice of the petitioner State to take these deeds into consideration (Judgement of August 30th, 1989 in the case S.).

*Id.* (Ex. H, at 6).

It is clear that what the Justice could "take into consideration" were preparatory deeds for the extraditable infraction, not preparatory deeds for infractions that were nonextraditable.

That was evidently also the understanding of the United States government when, in seeking the extradition of Mr. Bakhtiar, it described the conspiracy for which it sought extradition as "conspiracy ... *to commit an extraditable offense.*" (*See* extradition request (emphasis added)). It did not request extradition for conspiracy to defraud to be punished as a conspiracy to launder money.

The Swiss Federal Court was careful to prevent extradition for money-laundering offenses, which are not punishable under Swiss law. Their approach accords with the principles of the Treaty, and we should respect it. We should not allow a doubtful argument, based on a technical application of our domestic sentencing guidelines, to result in punishing Mr. Bakhtiar for money-laundering offenses for which the Swiss expressly denied extradition.[7] As stated in *Johnson v. Browne*, 205 U.S. 309, 321, 27 S.Ct. 539, 543, 51 L.Ed. 816 (1907):

> It is urged that the construction contended for by the respondent is exceedingly technical and tends to the escape of criminals on refined subtleties of statutory construction, and should not, therefore, be adopted. While the escape of criminals is, of course, to be very greatly deprecated, it is still most important that a treaty of this nature between sovereignties should be construed in accordance with the highest good faith, and that it should not be sought by doubtful construction of some of its provisions to obtain the extradition of a person for one offense and then punish him for another and different offense. Especially should this be the case where the Government surrendering the person has refused to make the surrender for the other offense on the ground that such offense was not one covered by the treaty.

### Conclusion

Using the base offense level for money laundering to calculate Mr. Bakhtiar's sentence on the conspiracy count would violate both the requirement of double incrimination underlying the Treaty and the separation

drawn by the Swiss Federal Court between money laundering and the offenses for which it extradited Mr. Bakhtiar. The proper guideline calculation produces a total offense level of 17, and a sentencing range of 24–30 months. Incarceration of Mr. Bakhtiar for more than 30 months would thus be unlawful. He is to be released from custody and afforded the liberty to leave the country (which Article IX of the Treaty contemplates) at or before that time.

So ordered.

---

**7.** Putting it another way: To the government's view that all it is punishing is a completely separate offense of conspiracy, the answer is that the Swiss view conspiracy as existing only within the substantive crime, and since double incrimination is required, we honor the Swiss view.