## *In re* CHRISTENSEN.

*(Circuit Court, N. D. California. September 4, 1890.)*

MUNICIPAL CORPORATIONS—ORDINANCES—CONSTITUTIONAL LAW.

A municipal ordinance, requiring all retail liquor dealers to procure a license, and making it an offense to retail liquor without such license, and at the same time forbidding any such license to be issued unless upon the arbitrary, uncontrolled, written consent of a certain designated number of persons, there being no other qualifications or conditions prescribed, violates the constitution of the United States, and is void.

*(Syllabus by the Court.)*

Petition for Writ of *Habeas Corpus.*
*Alfred Clarke*, for petitioner.
*Davis Louderback, contra.*
Before SAWYER, Circuit Judge.

SAWYER, J. I am always extremely desirous of avoiding any interference with the state courts in the execution of the laws, or what purport to be the laws of the state, and do not interfere when the circumstances are such that I can find it consistent with my duty to decline action, till the state courts have at least had an opportunity to act.

In *Ex Parte Royall*, 117 U. S. 241, 6 Sup. Ct. Rep. 734, the supreme court, while holding that the circuit court had jurisdiction by writ of *habeas corpus* to take a prisoner out of the custody of the state courts at any stage of the proceeding, when alleged to be held in violation of the constitution and laws of the United States, and to summarily determine the case, further held, that where there were no special circumstances to influence its action, it had the discretion to decline to interfere till the state courts could try the case, and even after trial and conviction, till an appeal or writ of error, where an appeal or writ of error lies, could be taken to the United States supreme court, and the constitutionality of the law be there regularly determined in the ordinary course of judicial proceeding. This decision gave to the circuit courts and judges, in such matters, a much wider discretion than I had before supposed was vested in them. The petitioner in this case applied to me about a year ago for a writ of *habeas corpus* to discharge him from arrest under the same ordinance now involved in this case. Acting upon the decision in *Ex Parte Royall*, I declined to issue the writ, not because I did not suppose it was otherwise a proper case for a writ, but because I saw no special circumstances in the case to require me to act at that time, and I therefore required him to go to the state courts for his remedy, and to pursue it, as he was entitled to do, by the regular course of proceeding on writ of error to the United States supreme court. The only difference to him would be in the channel through which he would reach the court of last

resort. I was exceedingly averse to, unnecessarily, putting myself in antagonism to the courts, and especially the higher courts of the state, over whose action I had no appellate jurisdiction in the ordinary course of proceedings in the administration of the laws.

He went to the state courts, and after something like a year's litigation, as the petition and record show, the ordinance now in question under which he was held was, by a *divided* court, declared to be valid not only under the constitution and laws of the state, but also that it violated no provision of the constitution or laws of the United States, and he was remanded to custody. The record further shows, that after this decision, the petitioner applied to the chief justice of the supreme court of the state for the allowance of a writ of error, but that the chief justice, notwithstanding the fact that the decision was rendered by a *divided* court, refused to allow the writ, in consequence of which he was deprived of the right guarantied to him by the constitution and laws of the United States, to have the question as to whether the ordinance does violate the constitution or laws of the United States, reviewed by the supreme court of the United States—the tribunal having the jurisdiction to ultimately and authoritatively determine the constitutionality and validity of the ordinance in this particular. The justice of the supreme court allotted to this circuit being absent in Europe, he cannot apply to him for an allowance of the writ of error, and he is now utterly without remedy., unless it can be had on this writ.

Under these circumstances, I do not feel at liberty under the laws of the United States, and under the decision in *Ex Parte Royall*, to further decline to issue the writ, and, summarily, examine the case, even though it devolves upon me in the exercise of this jurisdiction imperatively imposed upon me, to review, and, however unpleasant it may be to me, if the ordinance is found to be unconstitutional, overrule the decision of the highest court of the state.

The ordinance requires that every party selling liquors at retail shall pay for and take out a "license at a specified rate," and that, "after January 1, 1886, no license as a 'retail liquor dealer' * * * shall be issued by the collector of licenses, unless the person desiring the same shall have obtained the written consent of a majority of the board of police commissioners of the city and county of San Francisco, to carry on said business; but in case of a refusal of such consent, upon application, said board of police commissioners shall grant the same upon the written recommendation of not less than twelve citizens of San Francisco, owning real estate in the block or square in which said business of 'retail liquor dealer' * * * is to be carried on." It further makes it a misdemeanor to violate any of the provisions of the ordinance.

It also appears in the record, that the petitioner tendered the amount of his license fee, and requested the written consent of a majority of the police commissioners to the issue thereof, and it was refused; that there were not 12 citizens of San Francisco owning real estate in the block or square in which he desired to carry on his business as a liquor

dealer, and that it was therefore impossible to obtain the assent of 12 such citizens, and that a license was consequently refused; that proceeding with his business long before established, he was again arrested for violation of said ordinance, and he is now in custody in pursuance of such arrest.

I am, myself, after due consideration, unable to take the case out of the rule laid down in the second head-note to the decision in *Yick Wo* v. *Hopkins*, and *Wo Lee* v. *Hopkins*, 118 U. S. 356, 6 Sup. Ct. Rep. 1064, which reads:

"A municipal ordinance to regulate the carrying on of public laundries within the limits of the municipality, violates the provisions of the constitution of the United States, if it confers upon the municipal authorities arbitrary power, at their own will, and without regard to discretion in the legal sense of the term, to give or withhold consent as to persons or places, without regard to the competency of the persons applying, or to the propriety of place selected, for the carrying on of the business."

In commenting upon the view of the supreme court of California, that the ordinance then in question vested "in the board of supervisors a not unusual discretion, in granting or withholding their assent to the use of wooden buildings as laundries, to be exercised in reference to the circumstances of each case, in view of the protection of the public against fire," the United States supreme court in that case, said, on page 366, 118 U. S., and page 1069, 6 Sup. Ct. Rep.:

"We are not able to concur in that interpretation of the power conferred upon the supervisors. There is nothing in the ordinance which points to such regulation of the business of keeping or conducting laundries. They seem intended to confer, and actually do confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a *naked and arbitrary* power to give or withhold consent, not only as to places but as to persons. * * * The power given to them is not confided to their discretion, in the legal sense of that term, but it is granted to their mere will. It is purely arbitrary, and acknowledges neither guidance nor restraint."

The language quoted is just as applicable to this ordinance as to that, then under consideration. In that ordinance it was made unlawful for "any person or persons to establish, maintain or carry on a laundry within the corporate limits of the city and county of San Francisco, without having first obtained the consent of the board of supervisors," etc., and in the ordinance in this case, it is made unlawful for any person to carry on the business of a liquor dealer without a license which could only be obtained upon the "written consent of a majority of the board of police commissioners," or in default of that, upon the "written recommendation of twelve citizens," having property in the block or square where the business is desired to be carried on. What difference is there in the provisions of the two ordinances, except that the consent in the laundry ordinance is to be by the board of supervisors themselves, while in the liquor ordinance the power to consent or reject, is delegated by the board of supervisors to the police commissioners, or to 12 citizens of the block. If the board of supervisors could not confer upon, or reserve to itself this unregulated arbitrary power, it, certainly, could not

confer it upon the police commissioners, or upon private parties having no official relations whatever to the subject matter.

In the *Case of Wo Lee*, 11 Sawy. 429, 26 Fed. Rep. 471, this court differed from the state supreme court upon the same point decided in *Yick Wo* v. *Hopkins*, and gave its reasons for so doing at length, but in deference to the decisions of the supreme court of California, it yielded its own convictions, and remanded the petitioner, thinking it more seemly that the question between the state and the national courts should be authoritatively settled by the United States supreme court, on appeal, than to bring these subordinate courts into antagonism. The result was, both cases went to the supreme court of the United States. That court quoted largely from the opinion of this court, and approved its views. It consequently reversed the judgment of the circuit court, as it did of the supreme court of California, which this court had followed. *Yick Wo* v. *Hopkins*, 118 U. S. 356, 6 Sup. Ct. Rep. 1064. The decision of Justice FIELD in the *Laundry Ordinance Case*, 7 Sawy. 531, 13 Fed. Rep. 229, is also in point, and to the same effect. See *In re Wo Lee*, 11 Sawy. 429, 26 Fed. Rep. 471.

It is sought by counsel for the city, as was attempted by the state supreme court, to distinguish this case from the *Laundry Ordinance Case* cited, on the ground that the laundry business is a necessary business, and cannot be wholly suppressed, but only regulated, for the purposes of securing safety from fires; while selling liquors is supposed to be injurious to society *per se*, and may be wholly prohibited or permitted upon such conditions as may be prescribed—that the power to absolutely prohibit, necessarily includes the power to impose any terms or conditions, however arbitrary, no matter what, less than absolute prohibition, and consequently, that the power to grant or refuse a license may be delegated to the arbitrary and unregulated will of one or more persons, official or unofficial. I cannot as at present advised, assent to this proposition. This ordinance does not limit or regulate, or purport to limit or regulate the sale of liquors. It would seem to be upon its face—like other license ordinances—a mere revenue measure. It does not prohibit the sale of liquors, or limit their sale to any particular portion of the city, or to any number of persons, nor prescribe any qualifications whatever which shall be necessary to entitle a party to a license, or prescribe any conditions or characteristics which shall constitute a disqualification, and debar one from obtaining a license. It is not a matter of regulation at all. It simply provides that no license shall issue to any party unless he obtained the written consent of a majority of police commissioners, or of 12 property holders in the same block, without indicating any conditions whatever upon which the assent may or ought to be given, or withheld. It leaves it to the absolute arbitrary, unregulated will of the persons named. They can consent to grant a license to every vagabond and disreputable person in the city, and refuse to consent to a license to every respectable person in the city. The ordinance permits and authorizes such action. It puts it in the absolute, arbitrary power of these persons, to control the whole retail liquor trade

of the city—without regard to qualifications of the parties seeking a license, or to circumstances or conditions, or the interests of society. In my judgment, an ordinance that upon its face permits and authorizes such discrimination and inequality of operation, is a violation of the constitution of the United States. I admit the full power of the state to prohibit, limit and control the domestic liquor traffic, and to prescribe the qualifications and conditions applicable to all of those who are to be permitted to sell liquors, but this is a very different proposition from that which claims the authority to confer upon any one or more persons the arbitrary power in accordance with their uncontrolled will, to regulate these matters. It is not unlawful to deal in liquors or sell liquors at retail in California, or San Francisco, any more than it is to keep a laundry, which business also pays a license. The record shows that there are between 3,000 and 4,000 licensed retail liquor dealers in San Francisco. It is only made unlawful to sell liquors when you cannot obtain the written consent of a certain number of men whose action in yielding or withholding their consent is influenced by no qualifications or consideration other than their own arbitrary will, governed perhaps by prejudice or other unworthy motives. And that was one of the grounds upon which the laundry ordinance under consideration, was expressly and directly held by the United States supreme court to be unconstitutional. The police powers are the powers which come into play in the licensing and regulating of both occupations. And in both instances they operate upon the same legal principles, and they should have a similar equal and uniform application.

Under this ordinance the police commissioners for anything in its provisions to restrain them, might consent to the license as retail liquor dealers, of every immoral person in the city, while consent might be withheld from every person who is respectable and suitable for the business. If they do not do this, it is not because they are restrained by any provisions of this ordinance. These provisions permit it.

In the *Case of the Laundry Ordinance* cited, it appeared it is true, that the gross discriminations, which the ordinance permitted, were in fact made, in its administration. These arrests for such gross discriminations, were doubtless illegal on that ground also. But the discriminations in fact made, cannot affect the validity of the ordinance itself. The ordinance was declared void because it permitted a discrimination, not merely because its permission was in fact made available in practice. The validity of an ordinance must be determined by its terms, by what it authorizes, not by the manner of its execution. It is valid or invalid irrespective of the manner in which it is, in fact, administered. Its capability of being abused is the test.

In the case of the ordinance now in question no evidence was introduced as to the way in which it has been, in fact, administered. The case was argued, submitted, and decided upon the character, terms and provisions of the ordinance itself.

But the mode of its administration would be irrelevant to the point decided, as the question, is, as to the validity of the ordinance itself,

as it appears upon its face; and not whether it has been honestly or dishonestly administered. The fact that it permits arbitrary discriminations, and abuses in its execution, depending upon no conditions, or qualifications whatever, other than the unregulated arbitrary will of certain designated persons, is the touchstone by which its validity is to be tested. That there are likely to be abuses as in the case of the laundry ordinance, both as to individuals and classes, there is no reason to doubt, when an outburst of popular prejudice shall demand or countenance it; and it is also liable to be abused from more unworthy motives, considerations and influences. The ordinance should prescribe some conditions, qualifications or disqualifications, by which those who are to issue licenses are to be guided in their action, other than their own unregulated arbitrary wills.

After careful consideration, I am unable to take this ordinance out of the rule laid down in the second headnote in *Yick Wo* v. *Hopkins* and *Wo Lee* v. *Hopkins*, 118 U. S. 356, 6 Sup. Ct. Rep. 1064. As that decision is controlling so far as this court is concerned, I am bound to discharge the petitioner, however willing I might otherwise be to yield my individual views to the judgment of the supreme court of the state.

Let the petitioner be discharged.

Should the city desire to appeal to the supreme court of the United States, an appeal will be gladly granted. The question has reached such a state, that it is of the utmost importance that it be authoritatively decided. Until so decided the foregoing views will control the action of this court.