---

### Ex parte THAW.

(District Court, D. New Hampshire. September 16, 1913.)

#### No. 86, Law.

HABEAS CORPUS (§ 45*)—STATE PRISONER HELD FOR EXTRADITION—JURISDICTION AND POWER OF FEDERAL COURT.

Where it is alleged that a person arrested under state process for extradition to another state is restrained of his liberty in violation of the Constitution and laws of the United States, a federal court has full power to entertain habeas corpus proceedings for his release, and may in an extreme case proceed speedily and summarily, without regard to the pending extradition proceedings; but the court may in its discretion, and in recognition of the principle of comity, delay the hearing to await the action of the executive of the state without losing jurisdiction, and such course is especially proper when neither party insists on a speedy hearing.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 38–45; Dec. Dig. § 45.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Petition of Harry K. Thaw for writ of habeas corpus. Statement of reasons for delay in hearing.

In view of the novelty of the questions raised in this case, relating both to the law of extradition and to procedure, the following excerpt from the proceedings preceding and following the filing of the rescript herein is appended:

The petition of Harry Kendall Thaw respectfully shows to this court:

First. That said Harry Kendall Thaw is unlawfully imprisoned and deprived of his liberty without his consent and volition, by Holman A. Drew, sheriff of the county of Coös, state of New Hampshire, and some agent or subordinate of the said sheriff, or other person whom he designates by the fictitious name of John Doe; said captor's real name being unknown to the petitioner.

Second. That petitioner is unlawfully detained within the district of New Hampshire under color of the authority of the United States, in violation of the provisions of the United States Constitution, art. 4, § 2, subd. 2, and section 5278 of the Revised Statutes of the United States concerning the rendition of alleged fugitives from justice from any state in the United States, and contrary to the provisions of the fourteenth amendment of the Constitution of the United States forbidding any state to deprive any person of liberty without due process of law; that a copy of the warrant under which petitioner is detained is hereto annexed and made part hereof, being marked "Exhibit A," and petitioner verily believes that said warrant is the cause or pretense of his imprisonment or restraint; that the petitioner was arrested and taken into custody under and pursuant to said warrant on the 10th day of September, 1913, within the county of Coös and within the district of New Hampshire.

Third. That petitioner avers that said warrant under which petitioner is detained and imprisoned is illegal, null, and void, and was issued without jurisdiction; and he particularly refers to each and all of the following grounds upon which said averment is based, and avers the truth of the facts herein stated concerning said warrant:

1. That in the said warrant it is stated and alleged: "That one Harry K. Thaw, Richard J. Butler, a man about six feet tall, fairly light complexion, smooth shaven, and weighing about 185 or 190 pounds, and having a large nose, and Roger Thompson, a man about six feet tall and weighing about 160 or 165 pounds and clean shaven and square shoulders and well built and wearing a blue suit, fair complexion, Michael O'Keefe, Eugene Duffy, and Howard Barnum, and Thomas Flood, at the city of Beacon, county of Dutchess and state of New York, on the 17th day of August, 1913, did willfully, knowingly, corruptly, and falsely commit the crime of conspiracy against the people of the state of New York by conspiring among themselves to commit acts for the prevention and obstruction of justice, and the due administration of the laws, and to commit a crime by conspiring and arranging and planning to effect and procure the escape of one Harry K. Thaw, a prisoner duly committed to and confined in the Matteawan State Hospital, a criminal insane hospital of the state of New York, and by arranging, procuring, planning, and carrying out the escape of the said Harry K. Thaw, whereby on the 17th day of August, 1913, said Harry K. Thaw, with the aid and assistance of the said above-named parties and defendants, did escape from the said Matteawan State Hospital for the Criminal Insane at the city of Beacon, in the county of Dutchess and state of New York, contrary to the form of the Criminal Code of said state of New York, and against the peace and dignity of said state of New York. That the said Harry K. Thaw has fled from justice in said state of New York, and has made his escape to, and is now found within this state, and is liable, by the Constitution and laws of the United States, to be delivered over upon the demand of the executive of said state of New York, from which the said Harry K. Thaw has fled, to be removed to the state having jurisdiction of said crime. Wherefore the said Holman A. Drew prays that a warrant may issue to bring the said Harry K. Thaw before the police court for the dis-

trict of Colebrook, that the said Harry K. Thaw may be held to answer to this complaint, and that justice may be done in the premises."

2. That the said warrant fails to charge the petitioner, Harry K. Thaw, with having committed any crime, and that the magistrate signing the said warrant is without jurisdiction to hold the petitioner upon the same, in that the said warrant fails to charge petitioner with any crime.

3. Because the said warrant affirmatively and on its face shows that the said Harry K. Thaw, this petitioner, was duly committed and duly confined in the Matteawan State Hospital for the Criminal Insane, and is therefore unable to be guilty of any crime under the Constitution and laws of the state of· New York.

4. Because your petitioner has been adjudged insane in proceedings had under and pursuant to the laws of the state of New York, and is therefore unable to and has not the capacity to commit a crime under the Constitution of the United States and laws of the United States or of the state of New York or of the state of New Hampshire.

5. Because under and pursuant to the laws of the state of New York, it is not criminal for an inmate of a state hospital for the insane to escape therefrom, there being no provision in the laws of the state of New York making it either a felony, misdemeanor, or other offense for one confined in a state hospital to escape therefrom.

6. Because your petitioner is not a fugitive from justice from the state of New York, not having committed any crime therein, nor having the capacity to commit any crime therein, and is therefore not a fugitive in the state or district of New Hampshire.

Fourth. That your petitioner is informed and believes that there are at present in the state and district of New Hampshire certain officers from the Matteawan Hospital for the Criminal Insane in the state of New York, and other officers of the state of New York, who intend unlawfully and forcibly to seize this petitioner and unlawfully and forcibly, under color and pretense of the said warrant and ·of the proceedings taken and had thereunder, to obtain possession of the body of this petitioner, and unlawfully and forcibly, in violation of his legal rights, and without due process of law and in contravention of article 4, § 2, of the Constitution of the United States, and of the fourteenth amendment to the Constitution of the United States, to convey this petitioner, against his will, from the state and district of New Hampshire to the state of New York.

Fifth. Your petitioner further avers that he has not at any time been confined in the said Matteawan State Hospital for the Criminal Insane as the result of or upon the finding of any verdict of conviction of any offense, whether felony, misdemeanor, or other offense against the state of New York or elsewhere, but has merely been confined therein as an insane person or as an alleged insane person; and your petitioner reserves the right to amend this petition and to supplement the same by any further facts which he may be advised by his counsel may be proper and material to the application herein made.

Sixth. That your petitioner has been advised by counsel from the bar of both said states of New York and New Hampshire that the alleged offense which he is claimed to have committed in .the said state of New York, and for which said warrant is issued, is not an offense against the laws of the state of New York, and the facts upon which the said alleged crime is based do not constitute a proper charge of such felony, misdemeanor, or any other offense against the said state of New York.

Seventh. That the said· warrant is not taken out in good faith, nor will this petitioner if returned to the state of New York be put upon trial upon any indictment charging him with the ·offense of conspiring, but that the said warrant and complaint are merely a pretext to return the petitioner to the state of New York and to confine him there, within the said Matteawan State Hospital for the Criminal Insane.

Wherefore your petitioner prays that a writ of habeas corpus, directed to the said Holman A. Drew, sheriff of the county of Coös, in the state of New Hampshire, and to the said John Doe, wherever they may be found within

the district of New Hampshire, having the petitioner in custody, and that your petitioner, pending such hearing, may be held to bail; and your petitioner will ever pray.

Dated September 11, 1913.                    Harry Kendall Thaw, Petitioner.

    Martin & Howe,
    Drew, Shurtleff, Morris & Oakes,
    Goss & James,
    T. F. Johnson,
    House, Grossman & Vorhaus,
        Attorneys for Petitioner.

United States of America, District of New Hampshire.

Coös—ss.:

Harry Kendall Thaw on oath deposes and says that he is the petitioner named in the foregoing petition; that he has read the same and knows the contents thereof; that the same is true of his own knowledge, except as to those matters therein stated to be alleged on information and belief, and as to those matters, he believes them to be true.

Sworn to before me this 11th day of September, 1913.

        Merrill Shurtleff, Justice of the Peace.

### Rescript.

#### (September 13, 1913.)

ALDRICH, J.  The petition of Harry K. Thaw for a writ of habeas corpus, under United States authority, invokes the fourteenth amendment to the Constitution of the United States, which, among other things, declares that no state shall deprive any person of life, liberty, or property without due process of law, as well as other federal laws with reference to the restraint of personal liberty.  It is not necessary for present purposes to consider the allegations of the petition. other than that based upon the fourteenth amendment, because, under federal statutes, the writ upon such an allegation as that contained in the petition issues quite as a matter of course, if not as a matter of right.  It is ordered that the writ issue and be made returnable before me at Littleton, N. H., September 16, 1913. at 11 a. m., at which time, unless this order be extended, the respondent will make proper answer.

While reserving to federal authority the exercise of all such ultimate power, and the discharge of all such duty, as the Constitution and laws of the United States contemplate, in a situation like this, and while according to federal and state interpretations, state authority in respect to extradition results primarily, if not altogether, from federal law, it is not intended that the issuance of the writ shall interfere at all for the present, at least, with such of the state authorities of the state of New Hampshire as may be called upon to deal with problems involved in the proposition of extradition.

All persons should be strictly enjoined from interference with the execution of the writ.

The United States marshal, proceeding under the writ of habeas corpus, should confer and co-operate with Holman A. Drew, or any other person claiming to hold said Harry K. Thaw in custody, and, in connection with him or them, employ and use such force as is necessary to hold the custody of Thaw safe and such as may be necessary to protect him from violence or indignity, if such shall be attempted.

Let an order be attached to the writ which shall cover these suggestions.

### Writ of Habeas Corpus and Order of Court.

#### (Issued September 13, 1913.)

#### United States of America.

To Holman A. Drew, Sheriff of Coös County, State of New Hampshire, and "John Doe," the name "John Doe," being fictitious and being used to designate an agent, deputy, aid or assistant of the said Holman A. Drew, Sheriff of Coös County aforesaid, or other person, having in custody one

Harry Kendall Thaw, the real name of said persons being unknown to the petitioner. Greeting: We command you that you have the body of Harry Kendall Thaw by you imprisoned and detained, together with the time and cause of such imprisonment and detention, by whatever name said Harry Kendall Thaw shall be called or charged, before the Honorable Edgar Aldrich, United States District Judge for the District of New Hampshire, on the sixteenth day of September, A. D. 1913, at 11 o'clock in the forenoon of that day, in the United States courthouse at the town of Littleton, in the district of New Hampshire aforesaid, to do and receive what shall then and there be considered concerning said Harry Kendall Thaw, and have you then and there this writ.

Witness Honorable Edgar Aldrich, United States District Judge for the District of New Hampshire, at Concord in said District, this 13th day of September, 1913.                Burns P. Hodgman, Clerk U. S. District Court.
[Seal.]

To E. P. Nute, U. S. Marshal: In executing the precept to which this order is annexed, you will proceed to Colebrook, N. H., or such other place as you may find Holman A. Drew or such other person or persons covered by the writ as may have the said Harry K. Thaw in custody, and when found, co-operate with him or them, and in connection with him or them employ or use such force as is necessary to hold the custody of Thaw safe, and such as may become necessary to protect said Thaw from violence and indignity, if such shall be attempted. All persons are enjoined from interfering with the proper execution of the process to which this is annexed, and you will see that this injunction is executed.

By order of Edgar Aldrich, Judge of the District Court of the United States for the District of New Hampshire.

Burns P. Hodgman, Clerk U. S. District Court.

[Marshal's Returns.]

United States of America, District of New Hampshire—ss.:

Concord, N. H., September 13, 1913.

I certify that I have this day served on James P. Tuttle, Attorney General of the State of New Hampshire, a copy of the within writ of habeas corpus and order of court thereto attached, both attested by Burns P. Hodgman, Clerk of U. S. District Court.

F. S. Johnson, Deputy U. S. Marshal.

United States of America, District of New Hampshire—ss.:

Colebrook, N. H., September 15, 1913.

Pursuant herewith, I have this day served the within writ of habeas corpus upon Holman A. Drew, sheriff of Coös county, who had the custody of the within named Harry K. Thaw, and upon William T. Jerome, of counsel for the state of New York, by giving to each of them, in hand, a copy of said writ and order of court thereon, both attested by Burns P. Hodgman, clerk of U. S. District Court.                E. P. Nute, United States Marshal.

[Returns of Sheriff on Writ of Habeas Corpus.]

United States District Court, District of New Hampshire.

In the Matter of Harry Kendall Thaw.

To the Honorable Edgar Aldrich, United States District Judge of the United States for the District of New Hampshire: I, Holman A. Drew, hereby respectfully make return to the writ of habeas corpus heretofore issued in the above-entitled matter and served on me, as follows:

First. I am the sheriff of Coös county in the state of New Hampshire.

Second. I have in my custody the body of one Harry Kendall Thaw, and pursuant to said writ of habeas corpus I now here produce the body of said Harry Kendall Thaw.

Third. The cause of my detention and imprisonment of said Harry Kendall Thaw is as follows: The said Harry Kendall Thaw was imprisoned by

me upon the 10th day of September, 1913, and has been since that time imprisoned and detained by me by virtue of certain process directed to me by a justice of the peace for the county of Coös in the state of New Hampshire. A true copy of said process is hereunto annexed, is marked "Exhibit A" and is intended to be taken as a part of this my return to the said writ of habeas corpus.

Fourth. And in further compliance with the command of said writ of habeas corpus I have now here the copy of said writ heretofore served upon me.

Dated September 16, 1913, at Littleton, New Hampshire.

Holman A. Drew, Sheriff of Coös County, State of New Hampshire.

### Exhibit A.

To Bernard Jacobs, a Justice of the Peace for the County of Coös: Holman A. Drew, of Berlin in said county, complains:

"That one Harry K. Thaw, Richard J. Butler, a man about six feet tall, fairly light complexion, smooth shaven and weighing about 185 or 190 pounds, and having a large nose, and Roger Thompson, a man about six feet tall and weighing about 160 or 165 pounds and clean shaven and square shoulders and well built and wearing a blue suit, fair complexion; Michael O'Keefe, Eugene Duffy, and Howard Barnum, and Thomas Flood, at the city of Beacon, county of Dutchess and state of New York, on the seventeenth day of August, 1913, did willfully, knowingly, corruptly, and falsely commit the crime of conspiracy against the people of the state of New York by conspiring among themselves to commit acts for the prevention and obstruction of justice, and the due administration of the laws, and to commit a crime by conspiring and arranging and planning to effect and procure the escape of one Harry K. Thaw, a prisoner duly committed to and confined in the Matteawan State Hospital, a criminal insane hospital of the state of New York, and by arranging, procuring, planning, and carrying out the escape of the said Harry K. Thaw, whereby on the 17th day of August, 1913, said Harry K. Thaw, with the aid and assistance of the said above-named parties and defendants, did escape from the said Matteawan State Hospital for the Criminal Insane at the city of Beacon, in the county of Dutchess and state of New York, contrary to the form of the Criminal Code of said state of New York, and against the peace and dignity of said state of New York.

"That the said Harry K. Thaw has fled from justice in said state of New York, and has made his escape to, and is now found within this state, and is liable, by the Constitution and laws of the United States, to be delivered over upon the demand of the executive of said state of New York, from which the said Harry K. Thaw has fled, to be removed to the state having jurisdiction of said crime.

"Wherefore the said Holman A. Drew prays that a warrant may issue to bring the said Harry K. Thaw before the police court for the district of Colebrook, that the said Harry K. Thaw may be held to answer to this complaint, and that justice may be done in the premises."

[Signed] Holman A. Drew.

Coös—ss.: September 10, 1913.

Personally appeared Holman A. Drew, and made oath that the above complaint by him subscribed is, in his belief, true.

Before me, Bernard Jacobs, Justice of the Peace.

[L. S.] State of New Hampshire. Coös—ss.:

To the Sheriff of said County of Coös, or his deputy, or to any Constable or Police Officer of any Town in said County: Whereas Holman A. Drew of Berlin in the county of Coös has exhibited to me; Bernard Jacobs, justice of the peace for the county of Coös, his aforesaid and annexed complaint, upon oath, against Harry K. Thaw of Beacon in the county of Dutchess and state of New York,

We command you, therefore, to take the said Harry K. Thaw (if to be found in your precinct) and bring him before the police court for the district of Colebrook at the Colebrook police courtroom, in Colebrook, in said county,

And we further command you, to summon to appear, and testify what he may know relating to said complaint, when and where you may have said ...... before said police court for trial.

Dated the 10th day of September, 1913.

[Signed] Bernard Jacobs, Justice of the Peace.

Coös—ss.: Sept. 10, 1913.

I have arrested the body of the above-named Harry K. Thaw and now have him before the said police court as commanded, and I have summoned, as above commanded, the said ......

[Signed] Holman A. Drew, Sheriff.

(On the back of the writ of habeas corpus is the following:) Writ of habeas corpus and returns thereon. Returned in the United States District Court sitting at Littleton within and for the District of New Hampshire, on Sept. 16, 1913; and the body of Harry K. Thaw was produced in open court by Holman A. Drew, sheriff of Coös county, against whom, with others, the writ was directed. Attest: Burns P. Hodgman, Clerk.

Record of Proceedings at Littleton, September 16, 1913.

Clerk: In the matter of the petition of Harry Kendall Thaw for writ of habeas corpus. This writ is directed to Holman A. Drew. Is Mr. Drew in court?

Mr. Drew: Yes, sir.

Clerk: Mr. Drew, have you the body of Harry K. Thaw in court?

Mr. Drew: I have.

Court: The petitioner being in court, the responsibility in respect to the custody is shifted, and for the time being and temporarily I appoint Mr. E. P. Nute, United States marshal, and Holman A. Drew keepers, who for the present will be charged with the responsibility of custody. Who appears for the petitioner?

Mr. Shurtleff: If the court please, Drew, Shurtleff, Morris & Oakes appear for the petitioner, and Nathaniel E. Martin, of Concord, House, Grossman & Vorhaus, of New York City, as I understand it, and former Governor William A. Stone of Pennsylvania.

Court: Who appears to resist the writ? Who appears for the state of New York?

Mr. Jerome: In behalf of the state of New York, Mr. Franklin Kennedy, William Travers Jerome, as deputy Attorney General, and Mr. Bernard Jacobs, of the New Hampshire bar.

Court: Well, what is to be said?

Mr. Shurtleff: If the court please, I suppose we are here at this time to fix a time for the hearing on the petition. And we are informed, although not officially, that requisition papers have been filed with the Governor of our state, and that he has consented to grant us a hearing on the requisition papers. We are also informed, although not officially, that that hearing will be held to-morrow at 10 o'clock. At any rate, it will probably be held in the immediate future. We ask at this time that this hearing be postponed until some time after the Governor may have heard the case on the requisition papers and has rendered his decision.

Mr. Jerome: In regard to that, if it pleases your honor, we desire to interpose an objection. We believe that an examination of the return to this writ of habeas corpus will show that the questions raised are entirely frivolous in character, and interposed only for the purpose of delay. There is no federal question involved here, as shown by the petition and the return, federal in the sense that the laws of the state of New York or the state of New Hampshire are challenged. The memorandum which your honor filed in granting the writ pointed out that the writ issued practically as of course,

in view of the formal allegation that the detention was in violation of the fourteenth amendment of the Constitution of the United States, in that the prisoner was detained without due process of law. A wide familiarity with extradition cases enables me to say with some degree of assurance that the papers in this case are exactly the same as papers ordinarily employed in interstate rendition, are precisely such as have been time and time again passed upon both by the state and federal courts, and without exception, as far as I am aware, the extradition has always been granted. I wish in no way to challenge the good faith of counsel, but I feel constrained to say that in my judgment this writ has been sought, not so much to enable the relator and his attorneys to present to this court a serious question deserving this court's attention, but they have pursued a course which it seems to me, if the facts of which I am apprised are so, that approaches very close to trifling with the process of this honorable court. I hold in my hand an affidavit sworn to by one Lindsey Dennison, which sets forth in substance that he was informed by Mr. Grossman, one of the counsel for the defendants, the substance of it is that the purpose of obtaining this writ was because they had found that under the laws of the state of New Hampshire there would be danger, if the Governor honored the requisition from the state of New York, that this prisoner would be removed to the state of New York before they could obtain from the courts of New Hampshire a writ of habeas corpus; and that therefore they had resorted to this process in the federal court as a safeguard—safeguard being the word used ·by counsel—not to present to this court apparently any question, but that they might use the process of this court should the Governor grant requisition to delay the removal of the prisoner until they would have time to apply to the courts of New Hampshire. I think, sir, we have been now in trying to secure the return of the body of this prisoner to the state of New York something over three weeks. If there was really presented here a serious question, one that would be even of professional interest to discuss and examine, I would be the last person to oppose any reasonable delay that counsel might be adequately prepared to submit it to your honor, and that your honor might give it the consideration that it is entitled to. But an examination of this return by your honor I think will convince you that every one of the features required by the Revised Statutes of the United States and by the Constitution of the United States have been complied with. It is so plain on the face of the papers that there is not even a scintilla of violation of any right here, but it is the ordinary due course of procedure, that I beg that your honor will not remand us to some future day and impose upon us the further delays that have already occurred in this case. The requisition of the Governor of the state of New York has been presented to the Governor of the state of New Hampshire. He had made an appointment for to-morrow to hear it, but I am informed by Mr. Jacobs that he has postponed the hearing on that requisition until Friday. I say here to your honor that should the Governor decidé adversely to this prisoner, as I practically told counsel, there will be no unseemly haste in endeavoring to remove this prisoner from the jurisdiction of the courts of New Hampshire. It is more important, sir, to the interests of the state of New York, which I have the honor to represent, that we should proceed with dignity and decorum in a case already filled with scandal than that we should have the body of Harry Kendall Thaw or any other fugitive from its justice. Should the Governor of the state of New Hampshire decide to return this man under the requisition, there will be ample opportunity afforded by the representatives of the state of New York, and I have no doubt, if we were unwilling to do it, the Governor would be willing to see to it that ample time would be afforded for such review of his action in the courts of New Hampshire as might be fit and appropriate. While it is a distasteful task to suggest that this writ is not for the purpose of submitting to your honor serious questions, I feel constrained, in view of the affidavit that I have here and which I will file, and if it is traversed there are at least four witnesses in court who can testify to the same state of facts, I feel constrained to say, sir, that this writ is applied for rather for the purpose of delay, that this may get into

the courts of New Hampshire on a writ of habeas corpus, than for the purpose of presenting to your honor a serious question either of law or fact.

Court: Well, precisely what is your motion here? The return of the sheriff is attached to this writ?

Mr. Jerome: The sheriff has made his return, I believe, sir.

Court: And in that he states the process under which Thaw is held?

Mr. Jerome: He does sir. If your honor will allow me to state the process which he says, the return shows that he made complaint before a justice of the peace of the state of New Hampshire in the county of Coös that Harry Kendall Thaw was a fugitive from justice to the state of New York, setting forth that he was in the state of New York charged with the crime of conspiracy, and asked that he be held to await extradition. Upon that the mandate of the justice issued to the sheriff, and the sheriff is holding him under that mandate. Since the issuance of that, the requisition papers from the Governor of the state of New York upon the Governor of the state of New Hampshire have arrived and have been filed with the Secretary of State of New Hampshire, and are now before the Governor.

Court: Has the sheriff made the commitment process under which Thaw was held in the New York institution a part of his answer?

Mr. Jerome: No, sir.

Court: That may become material. How do you understand that he was held there?

Mr. Jerome: How he was held in New York?

Court: Yes.

Mr. Jerome: I have here an exemplified copy of the warrant under which he was held there.

Court: Was he held as a criminal or as an insane person?

Mr. Jerome: In the first instance, under our law when a jury acquits a man of a charge of murder where the defense is insanity, they are required by our law to specify in their verdict the ground of their acquittal. It was specified in the verdict acquitting him of the charge of murder in the first degree that he was acquitted on the ground of insanity. A Supreme Court judge of the state of New York before whom the trial was held then, in accordance with the provisions of our law, committed him to the state asylum for the insane at Matteawan in pursuance of our provisions of law until discharged therefrom by due process of law. Thereafter, on three occasions, he sued out writs of habeas corpus, contending that he had become sane and was entitled to his discharge. The first writ was returnable before a judge of the Supreme Court, and the hearing, if my memory is correct, occupied I think four days. That was in 1908, almost immediately after his acquittal and commitment to this institution. In 1909 he sued another writ and it occupied about five weeks. In July, 1912—

Court: I don't think the history of the case is material, except—

Mr. Jerome: Well, it is under orders of those judges that he is held, sir.

Court: One moment. I do not think the history of the case is material except so far as it bears upon the question of process, if at all—upon the question whether the process under which he is now held here in New Hampshire is due process within the meaning of the federal Constitution. Now it may be—we shall find out about that later on—that the process under which he was held at Matteawan will become material upon the question whether he is restrained in New Hampshire upon process in accordance with the spirit of the Constitution in respect to due process. I don't say that you should act upon this suggestion, if at all, now, but later on it may become material to inquire whether the conditions under which he is held in New Hampshire do not require that the authority under which he was held in New York should become a part of the proceeding here in the sense of the pending inquiry as to whether he is now constitutionally held and restrained by the state of New Hampshire. The time was fixed in the writ for the return, and was shorter than was intended; that is, I acted upon the supposition that this writ was to be served Saturday. I supposed that that was to be done. It seems it was not served until yesterday, so you are entitled

to further time. The sheriff is entitled to further time to perfect his return if he wishes it. Now you understand that under the fourteenth amendment as construed, that a writ of this character issues as of course and as of right unless it appears from the papers that the restraint is clearly in accordance with law. Well now, that being so, there was no intimation to me that it was for the purpose of holding it over anybody or over any state authority but for the purpose of safeguarding the petitioner's rights in a proper way. Of course, if you seriously contend here that it was a fictitious proceeding, or that it was obtained for improper purposes, I should hear you on that question.

Mr. Jerome: With your honor's permission—

Court: I further perhaps ought to say that I informed Mr. Shurtleff that while I understood the decisions of the Supreme Court made it imperative upon me under the circumstances to issue a writ, that the writ once issued would present a situation in which the broadest discretion should be exercised with the view of not interfering with the ordinary course of extradition proceedings, and now they come here and say they are not pressing for an immediate hearing. Do you want one?

Mr. Jerome: Yes.

Court: On what question?

Mr. Jerome: We say that our return shows that he is lawfully held under the laws and Constitution of the United States in extradition proceedings, and we ask your honor to quash the writ and remand the prisoner to the custody from whence he came.

Court: What does the other side say to that?

Mr. Morris: Your honor, the question here is a question of whether or not there should be an immediate hearing or whether this matter should be continued to await the action of the Governor and Council. We have been charged with bad faith. Perhaps it is unnecessary for me to inform the court that we are not asking anything in bad faith. We honestly desire a full and fair hearing for our client in this court at some time. The way the matter rests in my mind is this: There are proceedings pending before the Governor for extradition or rendition of Mr. Thaw. We want to present all of the questions at the proper time in this court. Now under our liberal mode of procedure in this state and in this court it seems to me that all of these questions may be properly raised upon this single writ of habeas corpus now pending before this court. If this case to-day is continued to some such time as your honor may name pending the proceedings before the Governor and Council, it may be that the officer at a later date should and could —or could and should—make a further return that he is now holding the prisoner in case of the granting of an executive warrant upon an executive warrant from the Governor. It might be that we would have to answer that petition in this same proceeding or reply to that answer in this same proceeding, then all of the questions necessary for the final determination of this question now pending would be properly before this court. And it is here that we desire to carry this matter along. It is here that we desire to have a final determination, in the federal courts, of the question whether Harry K. Thaw is properly held, and whether this warrant and this proceeding which the state of New York has instituted is, in fact, a subterfuge to get Mr. Thaw and take him back for commitment to Matteawan, or whether they in good faith intend to try him upon the trivial complaint which has been made before your honor, and which we say does not in fact set out any offense against the laws of the state of New York. Now we have not been able, as I understand from my Brother Shurtleff—the requisition of the Governor of New York was not filed at Concord until yesterday, some time yesterday forenoon —we have not been able to obtain copies. We do not know whether it is in the form set forth in the writ upon which Mr. Thaw is held at the present time or whether they have charged some new offense; in fact, we are entirely in the dark as to the proceedings. They charge us with bad faith in coming before this court. I assure the court that there is absolutely no bad faith on our part. That it is an honest intention on our part to get

these questions properly before this court. We were not unmindful of the section of the statute of the state of New Hampshire which provided that the Governor might issue his executive warrant to be executed forthwith, or he might issue a warrant to be executed at some future date. In that instance we would have had time, of course, to have prepared a writ of habeas corpus and brought it before this court. But if that executive warrant had been to deport Harry K. Thaw forthwith, there would have been absolutely no opportunity on our part, and we could get no assurance from Brother Jerome that he would wait a moment in case such an order came from the Governor. Now, under those circumstances, it was no more than justice to our client and in furtherance of our desire that he should have a fair and impartial hearing before this court that we should proceed at once under a writ of habeas corpus from some court, and we went to the court where we desire to have this question tested, and it seems to us under our practice here that it can all be tested in this court.

Court: One moment, Brother Morris. I want to know whether Mr. Jerome intends to raise the issue of bad faith. If so, there must be some issue framed with reference to it, and that must be heard. But I think when we consider the full situation in a comprehensive sense that a proceeding of this kind should not be attacked as fictitious or in bad faith; because, if I read correctly the expressions of the Supreme Court, they enjoin upon the federal authorities the imperative duty, when any man in custody complains that he is restrained of his liberty, of issuing a writ unless it clearly appears upon the face of his petition that the process is in all respects legal. And Mr. Jerome can understand, as well as anybody, that it would be utterly impossible, and obviously unreasonable, for a judge to assume that a process, mixed as this is, should be accepted as due and legal without hearing the parties. Now I make these two general observations about this case: The writ having been issued, there would be no purpose on the part of the federal government or its officials to in any way interfere with a reasonable investigation in the state courts or before the state executive, and, if I understand the other view correctly, the same disposition of comity is manifested by the state authorities, both the courts and the executive, when they reach their part in respect to sharing duty. Executive orders are generally subject to the opportunity of presenting legal questions. It might be by habeas corpus. Might be upon broader proceedings raising issues of fact either in the state or federal courts with a view of determining rightfully and in a proper way whether the situation is such that a party who is proceeded against should be extradited. Now if under these suggestions you desire to raise the issue of bad faith, that would present a collateral issue of fact which I should feel bound to hear. But unless you have a pretty strong case it is probably not advisable to trouble yourself in doing it.

Mr. Jerome: The information that came to me—

Court: I don't mean disrespect, at all, to your position.

Mr. Jerome: I appreciate the position of your honor. Let me say right at the outset of what I am about to say, that I, myself, could see how the federal court could have no option on that petition to do other than issue a writ; it seemed to me plain that the court would have to do it. But the only basis that I had for the statement that I made was the remarks, direct statements, made by a loquacious attorney who perhaps by no means—

Court: Well, I wouldn't—

Mr. Jerome: Could bind himself to commit the others.

Court: I wouldn't characterize the attorney in that way, Mr. Jerome.

Mr. Jerome: I will withdraw the remark. But the remarks, whatever Mr. Morris or Mr. Shurtleff state in this case, and Mr. Shurtleff stated to me yesterday that it was his intention, I accept without any question at all, sir. I accept it so fully—Mr. Morris said that he wants these things submitted to the federal court. I am perfectly willing to withdraw any opposition to a continuance for any time that suits their convenience, and submit the question to this court.

Court: Well, so far as I would express any preference about the matter, it would be that such questions as can be raised and perhaps will be raised

could be better raised in the state courts, but I don't shrink any duty imposed upon myself as judge of the federal court. Now we may as well come to the point. Do you desire to raise that issue?

Mr. Jerome: Of bad faith?

Court: Yes.

Mr. Jerome: Not in view of what Mr. Morris has stated. I accept anything Mr. Morris will state as absolutely correct.

Court: Very well. There are some matters in respect to the custody, and some matters in respect to the answer which we will need to talk about a little later on. My impression is that in order to have the pleadings perfected that it will probably be useful to counsel on both sides to take further time and consider whether the New York process by which Thaw was held should not become in some way a matter of pleading here. I don't know how broadly—this writ of habeas corpus is rather limited in its scope. It doesn't warrant, at least it may not warrant, an investigation of all the questions which may be material to the rights of the petitioner and to the state of New York. After I have determined what shall be done here, we will talk about that a little more. Then you are not to press the issue of bad faith, Mr. Jerome.

Mr. Jerome: I am perfectly willing to oppose no motion. I understood that the application to your honor by Mr. Morris or Mr. Shurtleff was for a continuance here, adjournment to another date. I think, though, that it would be no more than fair, if this thing is to go over without opposition, that they should be willing to stipulate, to submit it to your honor at any day of your own selection that your honor will give them, and stipulate if not litigated at once before your honor not to go then into the courts of the state of New Hampshire to litigate it over again. That would seem to be a reasonable stipulation to ask.

Court: I don't think the court in a case like this would be controlled at all by any stipulation in that respect. The immediate question, as I understand it, is whether the hearing shall proceed here now. I understand Mr. Shurtleff and Mr. Morris to state that they want a suspension; not a continuance, as I understand it, but a suspension. You say you want a hearing?

Mr. Jerome: I should like it, yes.

Court: Well, I think if I proceed with a hearing with the extradition proceedings pending, I shall do precisely what the Supreme Court of the United States has repeatedly said should not be done. As I understand the rule, it is that a proceeding of this kind having been once instituted, that it should be suspended or held in abeyance out of deference and under the rule of comity which exists between the federal and state governments.

Mr. Jerome: I certainly would not press your honor in any direction where you thought it was against the judgment or decision of the Supreme Court of the United States; it would be probably useless and ridiculous to do so.

Court: There is perhaps nothing further to be said. I may as well dispose of it in a general way, in view of the complications, and there are complications, because here is one party insisting before the executive of the state upon an immediate or speedy extradition, while the other party stands upon a writ of habeas corpus in which he alleges that he is held in violation of the federal Constitution. That, of course, presents a situation which imposes upon the authorities the duty of proceeding in accordance with law, and to discharge the obligations upon them, and, saying nothing of the public interest in this question, in view of the fact that there are two proceedings, one before the state executive and another in the federal court, to which, if the text-books and the decisions are to be respected at all, might take precedence of everything else, still, it is with the qualification that it should temporarily yield, at least, to the proceeding under the state authorities. And in view of the fact that there is a pendency of extradition proceedings, I have thought it my duty to hand down a rescript at some time, when counsel have said all that should be said here, which will make it perfectly understood as to what relation this proceeding sustains to the one

which is pending before the executive of the state of New Hampshire. And if everything has been said that counsel desire to say, I may as well dispose of the case now, and then we will come to these questions as to the pleadings here and the question as to the custody of Thaw pending these investigations.

Mr. Jerome: We have nothing further to present to your honor.

Mr. Shurtleff: What was the suggestion, your honor, about the custody of Thaw?

Court: Well, later that will come up, as to the custody of Thaw; that is, as to how it shall be safeguarded and controlled pending the investigation.

(Following Reading of Rescript.)

Mr. Morris: Your honor, I would say that the custody suggested by the court is satisfactory to us.

Mr. Jerome: Entirely so to us, sir.

Court: The statute requires imperatively a return or an answer to the writ. But my view is that that is something to be treated in a practical sense, and I make the assumption, of course, that all counsel concerned in the interests involved. here desire in all reasonable ways to have the issues properly framed, and that it may be as well to let this question of perfect-- ing the pleadings go along with suspension and treat it as something open to amend if you desire it, enlarge it if you desire it, or stand upon it as you have framed it here. You are satisfied with the proposed custody, Mr. Jerome?

Mr. Jerome: Entirely so, sir.

Court: It is understood, of course, that these keepers are appointed un- der the authority of this writ. If counsel will examine this case against a sheriff to which I have referred, it will be seen that the responsibility of the sheriff as such is suspended altogether, and as keeper he stands here acting under federal authority. That seems to be the rule in order to pro- tect one interest as well as the other. You understand that to be that way, Mr. Jerome?

Mr. Jerome: Perfectly.

Court: Now then, of course the keepers will employ such force as they deem necessary to safeguard the petitioner; they will give him all reason- able opportunities to confer with counsel; they will go to all reasonable places where the state authorities require his presence, in order that the proceedings there may go forward conveniently. Anything further to be said?

Mr. Jerome: Nothing, sir, on our part. I might ask this: As I under- stand the intimation of your honor—which would be entirely agreeable to us—it is that. the framing of any further pleadings in this matter, or fur- ther amending the return, may be suspended until the question of the hear- ing comes up.

Court: My idea about this hearing is this: That it is not adjourned; it is still on.

Mr. Jerome: Just suspended.

Court: Merely suspended. The statute, as you are aware, requires the return to be made within so many days. But as I understand it you have made a return, and that being so, I think I am right in saying that it may be enlarged or may be perfected. Of course, there is something to be done by the petitioner by way of replying to this answer. I think, if no one ob- jects, it may be as well understood that the matter of perfecting the plead- ings is suspended until some one makes some motion about having them perfected. Unless you deem the statute imperative that you should do it within a given time. (Reading) "When a writ is returned a day shall be set for a hearing of the cause not exceeding five days thereafter." The person to whom such return is directed shall make return within three days there- after, and so forth.

Well now he has made his return, as I understand it. I think it is per- fectly open, especially upon consent of all parties interested, to give you further time if you want it.

Mr. Jerome: I took it, sir, that it would be proper procedure. You see as yet, from the intimations of your honor and the rescript that you have, that it would appear, naturally, that no hearing would proceed in the federal court until the decision of the Governor. And your honor's intimation, while not intimating what effect it has, stated as a legal proposition that questions of fact or law might arise before the Governor which would be taken as adjudications, so it might become important before a final hearing on this to put in an amended or further return setting forth the proceedings before the Governor.

Court: Yes.

Mr. Jerome: The return now in is strictly correct up to the time of making it. Subsequent proceedings may occur that would render it desirable for the sheriff to return that since—he makes further return to the writ, that since the return made in obedience to the writ following facts and circumstances have arisen which he begs to present in determination of the issues involved.

Court: Well, I have simply thrown out the suggestion as to the pleadings. You must examine the question and act on your own judgment about it. As far as the prisoner is concerned, I think the statute contemplates, at least the decisions do, that they shall make some reply; and that they may traverse certain of the allegations and so on. And if the matter of pleadings is to remain open it is by common consent, as I understand it. I wish to say in conclusion of the disposition of the matters here to-day that my object, as counsel will readily see, in making definitely known through a rescript what is done here, was to give the executive authorities of the state to understand the precise situation and precisely what is being done in this proceeding. It has been represented to me that the Governor had expressed some doubt as to whether he should proceed or not until he understood perfectly what the effect of the action was under this petition. I therefore felt it incumbent upon me to have it understood through a rescript. It is right that counsel for all interests should understand it, too.

Mr. Morris: One word, your honor, with reference to perfecting the pleadings. I suppose perhaps it may follow as a matter of practice, of course, that when Brother Jerome files any further answer or pleadings that we may have a copy of it and such time, reasonable time, to answer as may be necessary.

Court: That, of course, is true. I don't wish it to be understood that I have suggested the propriety or the necessity of your enlarging your answer at all, Mr. Jerome. I merely throw out the suggestion that you may consider it. And then it is probably open to counsel for the petitioner to raise questions whether this New York process under which Thaw was held as an insane person should become a part of the proceedings at issue, because it is a question under the limited scope of a habeas corpus proceeding whether that becomes something to be considered upon the question, whether the process under which he is held here is due process. The novelty of the situation, as everybody must see, results from the fact that he was held in an institution in New York under process against him as an insane person, and the offense or crime upon which it is sought to have him extradited consists, according to their own account of it, and their own description of it, in his escape from that institution. Now whether that is a crime, whether the state of New York, holding a person as an insane person, is in a position to set up his escape as a crime within the meaning of the federal Constitution and of the state authorities. If you have found anything in the books, Mr. Jerome, on that question, you have done better than I have. It seems to me that it involves a novel proposition.

Mr. Jerome: If I understand your honor right, the proposition would seem to look to the point of whether a person of unsound mind could be charged with criminal responsibility.

Court: Well, I am not making any—

Mr. Jerome: But since the rule in Norton's Case, which we have practically enacted into a statute, and which I understand to be the rule in in-

sane cases in federal jurisdiction, the rule laid down in Czolgosz Case and the Guiteau Case, that if a person knew the nature and quality of the act and that it was wrong, it did not matter whether he was sane or not.

Court: There results the novelty. The question comes whether it is not open to the petitioners here to raise that question of fact in the state courts of New Hampshire.

Mr. Jerome: Well, I submit—

Court: To raise issues of fact for the jury which present that question of mental responsibility. I don't intimate anything one way or the other about it, but you seemed to assume at the outset that the questions were entirely clear. I don't think they are.

Mr. Jerome: They are not clear if those questions are open, but I think on the argument I will be able to show to your honor decisions of the federal courts in extradition that the door is closed to your honor's investigation of those questions. That is what led me to say that in my opinion it was simple. If we had to go into those questions, it would be by no means simple, nor brief.

Court: I wish it to be understood that I am making no intimation as to what I think about the question when I say it is novel. But if you stand upon the position that extradition is justifiable provided Thaw was of sufficient mind to commit a criminal act at the time he escaped from Matteawan, you put a qualification upon your proposition at once. Now where is that question of mental condition within the meaning and scope of the extradition law to be determined, in New York or in New Hampshire?

Mr. Jerome: We shall probably—

Court: In New York or in New Hampshire, the state from which you are asking to forcibly extradite him?

Mr. Jerome: We shall probably contend before your honor this: That there are three questions, there being no contention that the statutes as I understand it either of New York or New Hampshire are unconstitutional, that the door is closed to your honor's investigation except on three questions.

Court: Well, is it closed?

Mr. Jerome: That is what we shall contend.

Court: Is it closed? When one sovereign state asks another sovereign state to forcibly seize a man and carry him across the line to another jurisdiction is any question closed?

Mr. Jerome: If we understand the decision, the unanimous decision of the Supreme Court of the United States in the Pease Case, in the 207th U. S. we think it is. We think that all that will be open for your honor's investigation will be, "Is he charged with crime?" "Was he in the state at the time of the commission of the crime and now found here, and is he the person mentioned?" The Supreme Court having gone so far as to say in that case, conceding that the indictment was demurrable and bad—

Court: I think you are perfectly correct in that proposition as a general one, but when the papers show that one is charged with a criminal act, and that that act is involved in and solely grounded in the escape from a warrant which holds him as an insane person, have you cases which hold that he would be extradited as a criminal?

Mr. Jerome: We have cases that hold as you have in the federal jurisdiction that an insane man is held to criminal responsibility. The most striking case in our state was where a man conceded by the district attorney to be insane was convicted of murder in the first degree and put to death because it is said that, while he killed under an insane delusion, the insane delusion was not one which, if true, would justify his acting.

Court: What was the process there?

Mr. Jerome: Indictment, trial, conviction, sentence, electrocution. You see, sir, our contention is, and we think we can show you authorities that will lead you to the same conclusion that we have, that all the federal court looks at is, "Is there a charge?" and that under the federal Constitution the word "charge," as was said in this Pease Case, is not whether it is

well founded or not. That it would be impossible for the federal courts to go into that question, because it would be in substance to give every man two trials when he was on an extraditable offense.

Court: I entirely agree that if there is a charge of crime, and there is no question about it, no fact appearing upon the record or in the papers which impinges on that allegation or charge of crime, that that is quite sufficient. But whether when, in describing the crime which is charged, the description of the crime necessarily involves the fact that he was held under insane process qualifies it at all, is the query.

Mr. Jerome: Except that the prisoner doesn't come before you alleging that he is insane.

Court: The petition shows that.

Mr. Jerome: Not that he was insane.

Court: No, but that he was held under insane process there.

Mr. Jerome: Until he was discharged by due process of law.

Court: Well, the papers somewhere show that he was held under insane process. I don't use the exact words, but that is the idea. It is in the record somewhere if it isn't (I think it is) in the petition. Now there is really no question for further discussion except as it may arise as to what further should be done. But I will say that counsel on both sides better examine cases which involve indictments and trials of issues of mental capacity and see how far they apply to similar questions involved in extradition proceedings where one state is asking another to exercise its authority for removal to another jurisdiction.

Mr. Morris: May it please the court, one further suggestion as to the perfecting of the pleadings. Of course, we cannot foresee just exactly what may be filed on the other side, and something might arise which would require us to amend our petition.

Court: Yes.

Mr. Morris: And we would want to reserve the right to do that.

Court: Well, I think Mr. Jerome should determine within, we will say, three days whether he will amend, or whether those interested for the state of New York will enlarge or amend their answer, and then you take how many, three days more?

Mr. Morris: Yes.

Court: Will that be enough? I will give you more time, Mr. Jerome, if you want it.

Mr. Jerome: Abundance of time, sir.

Court: Well, you may make it three days, Mr. Hodgman. And if you want more time, Mr. Jerome—

Mr. Jerome: I will apply for it.

Court: You ask for it and you will get it.

Mr. Morris: You mean three days after notice?

Court: Yes.

Mr. Jerome: Will your honor set any definite time, then, for a hearing, or have it brought up on notice?

Court: No, I can't say. The hearing is open under the circumstances which I have stated, and it is open to any party interested to ask for a hearing on any question that they may wish to have heard. Now if there is nothing further the keepers will take the prisoner in custody.

(Recess to 2 o'clock, p. m.)

Mr. Jacobs: May it please your honor, this morning you gave the state of New York three days in which to file an amendment or additional return on the writ. Now at that time it was thought that there might be a hearing before the Governor some time this week, possibly to-morrow or Friday. Now since then, since the adjournment this morning, the Governor has designated next Tuesday morning as the time for hearing, and therefore, if your honor pleases, we would like to have until a week from Thursday, something like that—that would be the 25th—in which to file an additional answer.

Court: Any objection to that?

Mr. Morris: No, your honor.

Court: Well, the time for amending the answer in the Thaw petition is enlarged by consent to September 25th.

Drew, Shurtleff, Morris & Oakes, of Lancaster, N. H., and N. E. Martin, of Concord, N. H., for petitioner.

William T. Jerome, of New York City, and Bernard Jacobs, of Lancaster, N. H., for State of New York.

ALDRICH, District Judge. Apparent uncertainty of counsel as to the effect of the pendency of this writ upon proposed extradition proceedings, and the possibility that the state authorities may be in doubt as to the reasons for not proceeding summarily to determine the question of discharge or no discharge, make it justifiable and advisable to file a rescript which shall explain the action taken here and the grounds for it.

It is understood that the state of New York is seeking to have the petitioner, Harry K. Thaw, returned to that state under the executive authority of the state of New Hampshire, and that he has been held in custody under New Hampshire state process to that end. The person so restrained institutes habeas corpus proceedings under federal law, in which he alleges that he is held in violation of the federal Constitution and laws, and particularly in violation of the fourteenth amendment in respect to due process and liberty.

This proceeding does not expressly involve the proposed extradition hearing before the state executive, yet it concerns it indirectly, in the sense that if this hearing should go forward, and if it should be determined here that the process under which the petitioner is held is not constitutionally due process, and that the restraint is therefore illegal, it would doubtless be contended that the result should be accepted as conclusive of the question of the right of extradition under the existing state process.

The rights of the state of New York are not of such urgency as to justify summary and precipitate action here in advance of the usual and proper course of interstate extradition proceedings, and the petitioner, having invoked federal protection for the purpose of saving his federal rights and of not waiving them, does not now insist upon his constitutional right of a speedy hearing and a speedy test of the question of the legality of the state restraint, and having thus safeguarded his rights, through his counsel, yields to the idea of a postponement of this hearing to the end that extradition proceedings may go forward before the state executive in the ordinary and usual way. This is a perfectly proper course for counsel to pursue. It is in perfect harmony with our system of federal and state interrelations. It involves no yielding of the idea of the paramount authority under the federal Constitution, and is strictly within the spirit and the reasoning of the Supreme Court in Ex parte Royall, 117 U. S. 247–253, 6 Sup. Ct. 734, 29 L. Ed. 868, and other Supreme Court cases.

What law and justice may require is often an embarrassing question for courts and other officers before whom persons are brought for such purposes as exist in this case, and in this particular case, whether the character of the custody in New York, prior to the alleged escape,

where, as is alleged, the petitioner was restrained in an institution because of insanity, or something like it, rather than for crime, where the offense for which he is sought to be extradicted consists in his compassing his escape, whether the warrant of commitment under which the petitioner was held in New York, and whether, under the circumstances of this case, the question of extraditable crime, which is a mixed question of law and fact (Ornelas v. Ruiz, 161 U. S. 502, 16 Sup. Ct. 689, 40 L. Ed. 787), are involved, among other things, in the question of constitutional due process, at once present more than the usual novelties and difficulties, and their proper solution will require careful and painstaking consideration.

Under the colonial system there was no such thing as extradition of fugitives from one colony to another, except under imperfect compacts in the nature of treaties. Nor was there between the states until the Articles of Confederation, a source from which power of extradition was derived. Subsequently the federal Constitution, through the second section of article 4, defined and established a definite source of power with reference to extradition from one state to another, which section is as follows:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

Following this there was congressional action, which imposed upon the states certain regulations and duties in respect to extradition, and, without much change, the regulations and duties are now defined by section 5278, page 3597, vol. 3, U. S. Comp. St. 1901, which corresponds to the same section of the Revised Statutes of the United States. Rev. St. p. 1022.

As repeatedly expressed by the Supreme Court and the highest courts of the various states, interstate extradition is now regulated by the federal Constitution and laws in pursuance thereof. Generally speaking, the states have recognized the power of extradition as emanating from federal source. This is particularly so in respect to New Hampshire, the state from which the person in question is sought to be extradited, because section 1 of chapter 263 of the Public Statutes of 1891 of New Hampshire (page 706), provides that:

"Whenever a person in this state is charged with an offense committed in another state, and is liable by the laws of the United States to be delivered over upon demand of the executive of such other state," etc.

It is thus seen that New Hampshire expressly recognizes the laws of the United States as the foundation for extradition, and this view is fully accepted by Judge Walker, who delivered the opinion of the Supreme Court in State v. Clough, 71 N. H. 594, 53 Atl. 1086, 67 L. R. A. 46, which is popularly known as "Mrs. Munsey's Case."

While the Supreme Court decisions sustain the federal power, in the broadest sense, in a situation like this, where it is alleged that the party is restrained of his liberty in violation of the Constitution and the laws of the United States, as well as the view that hearing on habeas cor-

pus may in an extreme case proceed summarily and speedily, for the purpose of testing the legality of the restraint, still, if I understand the scope and theory of them, they also sustain the doctrine of a broad, practical discretion, when the party invoking the federal law is held under state authority, upon the question whether the interests of government and of the parties concerned require that federal courts shall proceed at once to determine ultimate rights, or whether, without relinquishing federal authority, considerations of usage and comity require suspension of a given proceeding for the purpose of allowing the state authorities to deal with questions of extradition; and the reasons for federal suspension are especially weighty where the person invoking the writ does not insist upon pressure of federal instrumentalities.

This is upon the theory that the state authorities, executive and judicial, are charged with the same duty as that of the federal authorities in sustaining the provisions of the laws of the United States, so far as they apply to given situations which involve questions of interstate extradition.

It is perfectly obvious, in respect to a proceeding involving proposed extradition, that some findings of the executive of a state might be accepted as conclusive and binding upon both state and federal courts, and it is equally obvious that questions might arise before the executive, where its action would not be binding upon either. Upon the question as to what findings would be conclusive and what not conclusive I make no intimation whatever.

The reasoning of federal and state decisions which sustain this view of suspension or delay of federal process, even where it is alleged that the restraint is in violation of the federal Constitution, is based upon the idea that, if investigation by the executive results in denying extradition, the aggrieved person would be set at liberty, and thus there would be no necessity for interposition of federal instrumentalities, while, if the result there were to be different, it would still be open to federal authority to afford such protection as the Constitution and laws of the United States require.

Holding pendency and control of this proceeding, under suspension, menaces neither the rights of the parties concerned, nor of state authorities. The proceeding is based upon a right which rests with every person restrained of liberty, and delaying the hearing, under the circumstances to which I have referred, is for the express purpose of allowing the state authorities, upon whom under our system equally with us rests the obligation to guard, enforce and protect every right guaranteed or secured by the Constitution of the United States and the laws made in pursuance thereof (117 U. S. 248, 6 Sup. Ct. 734, 29 L. Ed. 868), to go forward with attempts to legally solve the questions involved in the contest between the state of New York and the petitioner.

Under our system of federal and interstate relations, the fullest measure of comity exists in respect to extradition proceedings, and while there is no rule of comity which justifies extradition, unless the Constitution and the laws provide for it, the spirit of comity between

the federal and state governments is such that each assumes, with respect to the other, that proceedings will be in accordance with the supreme law of the land, and it is understood that this practical and wholesome view holds until some question is evolved which reasonably presents a situation which justifies a review under proper proceedings.

Such considerations make it justifiable, the custody of the party petitioning for the writ being properly safeguarded, that the hearing under the writ before us be suspended, to the end that the executive of the state shall have a free hand in respect to the extradition investigation contemplated by the Constitution and the laws.

Under such suspension as may be deemed advisable under these suggestions, it must be understood that it is open to the petitioner, at any time, to press his alleged constitutional right of an immediate hearing. It is likewise open to counsel representing the state of New York or the state of New Hampshire to move, at any time, for a hearing or for a dismissal of the writ.

The parties will consider whether the pleadings contemplated by the federal statutes should be perfected within the statutory period, or whether those are matters which go along with the suspension.

Under the decision of the Supreme Court in Barth v. Clise, Sheriff, 12 Wall. 400, 20 L. Ed. 393, as the body of the petitioner has been produced, the control of his person must be treated as within this proceeding, subject to recommitment to state authority, to be held to bail or placed in the custody of suitable keepers. My inclination is to appoint keepers, and to appoint Mr. Nute, the marshal, and Mr. Holman A. Drew, as such a custody will be most convenient for all, at least during these hearings.

Counsel will confer upon this question of custody.